### CALIFORNIA PACKING CORPORATION v. HALFERTY (three cases).

(Court of Appeals of District of Columbia. Submitted November 16, 1923. Decided January 7, 1924.)

Nos. 1609–1611.

I. **Trade-marks and trade-names and unfair competition ⬥43—Canned salmon and canned fruits belong to same class.**

Canned salmon and canned fruits belong to the same class, and have the same descriptive qualities; both being canned food products commonly sold in the same kind of stores.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Trade-marks and trade-names and unfair competition ⬤⇒43—"Gold Band" and "Silver Band" likely to be confused with "Gold Bar" and "Silver Bar," but "White Band" entitled to registration.**

Where applicant applied for registration of the marks "Gold Band," "Silver Band," and "White Band," and opposer's marks were "Gold Bar" and "Silver Bar," *held* only the mark "White Band" could be registered, as the marks "Gold Band" and "Silver Band" would be likely to be confused with opposer's marks.

3. **Trade-marks and trade-names and unfair competition ⬤⇒43—Examining marks together not proper test.**

Looking at the marks of each party together is not the proper test, as purchaser is entitled to decide at a glance.

4. **Trade-marks and trade-names and unfair competition ⬤⇒43—Selecting mark resembling that of competitor evidence of intent to benefit by latter's good will.**

Where one selects a trade-mark resembling that of a competitor, there is room for the belief that he is seeking some of his creditor's good will, as the field from which a trade-mark may be selected is practically limitless.

5. **Trade-marks and trade-names and unfair competition ⬤⇒43—Doubt resolved against last to adopt mark.**

Where there is doubt in trade-mark opposition cases, the doubt will be resolved against the one last to adopt the mark.

Appeal from the Commissioner of Patents.

Three separate applications by G. P. Halferty for the registration of trade-marks, opposed by the California Packing Corporation. From a decree dismissing the opposition, opposer appeals. Affirmed as to 1611, and reversed as to 1609 and 1610.

Archibald Cox, of New York City, and W. G. Henderson, of Washington, D. C., for appellant.

Arthur E. Wallace, of Chicago, Ill., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. These are opposition proceedings, in each of which Halferty applied for the registration of a trade-mark to be used on canned salmon. The mark in No. 1609 consisted of the words "Gold Band" and a band of gold extending from one end to the other of the label; in No. 1610, of the words "Silver Band" and a silver band extending like the gold band; and in No. 1611, of the words "White Band" and a band of white of the same length as the other bands. Applicant commenced the use of his brands about June, 1921. , Opposer bases its contention on two registered marks; one consisting of the words "Gold Bar," the background of which is a gold bar or band, and the other of the words "Silver Bar," the background of which is a silver band. Each was applied by it to canned fruits for many years before the applicant came into the field, but neither was used on canned salmon until after the applicant had adopted his mark. The latter is therefore prior in point of time as to that use.

[1] Two questions are presented for decision: (1) Whether canned salmon and canned fruits have the same descriptive properties, within the meaning of the Trade-Mark Act (Comp. St. § 9490) ; and (2) if they have, whether or not the marks are so similar as to be likely to pro-

duce confusion in the minds of purchasers. The Examiner of Interferences held that they were not similar and dismissed the opposition. The dismissal was upheld by the Assistant Commissioner, who ruled that the silver and gold bars of the opposer were readily distinguishable from the marks of the applicant.

We think the goods belong to the same class and have the same descriptive properties. Both are known as canned goods. We held in California Packing Corporation v. Price-Booker Mfg. Co., 52 App. D. C. 259, 285 Fed. 993, that canned fruits and canned pickles were goods of the same class. The reasons given for doing so support our conclusions here. In the Second Circuit it was decided by the Circuit Court of Appeals that pancake flour and pancake syrup had the same descriptive properties. In doing so it observed that syrup and flour are both food products, and foods products commonly used together. Obviously, the public, or a large part of it, seeing the trade-mark in question on a syrup, would conclude that it was made by the complainant, although they might not do so, if it were used on flatirons. Aunt Jemima Mills Co. v. Rigney & Co., 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039. We may say the same here with respect to the goods of the contending parties. They are related to each other, both being food products, and are not only commonly used together, but are commonly sold in the same kind of stores.

[2] Concerning the alleged similarity of the marks, it seems to us that the goods would be known by the printed words in the mark attached to them, as, for instance, a package of salmon bearing the mark "White Band" would be known as White Band salmon, and that bearing the "Gold Bar" as Gold Bar salmon. It is not believed that any confusion would follow from the use of the White Band and the Gold Bar or Silver Bar marks. But in our judgment it is otherwise in the case of the Gold Band and Silver Band marks of the appellant and the Gold Bar and Silver Bar marks of the opposer. "Gold Bar" and "Gold Band" look and sound a good deal alike. So do "Silver Bar" and "Silver Band." It would be easy to mistake the one name for the other. While the bands used by the opposer are wider on its specimens than are those on the specimens of the applicant, there is nothing in either case which specifically limits the size of the band or bar.

[3] Of course, if a prospective purchaser could see the marks of both parties together, he would have no difficulty in distinguishing the one from the other; but that is not the test, because he rarely has such an opportunity. Suppose a person is accustomed, let us say, to use canned fruits put out by the opposer, and that he desires canned salmon. He sees a package on the dealer's shelf with petitioner's mark thereon. He decides at a glance, as he may (Patton Paint Co. v. Orr's Zinc White, Limited, 48 App. D. C. 221), what he shall do. We think he would be likely to assume, because of the mark, that the product of the petitioner originated with the opposer, and to purchase it as the output of the latter. To prevent such confusion as this is the aim of the law.

[4, 5] Since the field from which a person may select a trade-mark is practically limitless, there is no just reason for taking one which near-

ly resembles that of a rival in trade. Thomas Manufacturing Co. v. Aeolian Co., 47 App. D. C. 376; Coca-Cola Co. v. Chero-Cola Co., 51 App. D. C. 27, 273 Fed. 755; Florence Manufacturing Co. v. J. C. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565. Where one does so, there is room for the belief that he is seeking some of his competitor's good will. Coca-Cola Co. v. Chero-Cola Co., supra. Consequently, whenever we doubt in a trade-mark opposition case, as we do here, we resolve the doubt against the one last to adopt the mark. William Waltke & Co. v. Geo. H. Schafer Co., 49 App. D. C. 254, 263 Fed. 650; United Electric Co. v. Replogle, 53 App. D. C. 228, 289 Fed. 626.

The fact that the opposer put out canned salmon for many years under a mark different from that which it now applies to that product is immaterial. Even though it had never used any of its marks on canned salmon, our decision would have to be the same, because it had applied them to fruits and vegetables, which we hold belong in the same class as canned salmon, and, this being so, the confusion against which the statute is leveled would result if registration was granted to the applicant.

We do not think the decision in Pabst Brewing Co. v. Decatur Brewing Co. (C. C. A.) 284 Fed. 110, cited by the Commissioner, throws any light upon the subject. That was an infringement suit, in which the Pabst Company sought to prevent the Decatur Company from using the term "Blue Ribbon" on malt extract, claiming that, as it had used it for years as a trade-mark for beer, for which it had been registered, it (the Pabst Company) had a right to extend its use to malt extract. The opinion shows that the term "Blue Ribbon" had been registered in the Patent Office more than 60 times as a trade-mark for various articles of commerce, and because of this extensive use the court held that the term had acquired special significance wholly apart from its use as a trade-mark for any product, and consequently that the Pabst Company's right to use it was limited to the product for which it had been registered.

For the reasons given, we think the opposition in No. 1611 was correctly overruled, but that in 1609 and 1610 it should have been sustained. As to 1611, the decision of the Commissioner is affirmed; and as to 1609 and 1610, it is reversed.