**ARROW DISTILLERIES, Inc., v. GLOBE BREWING CO.**

No. 4622.

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1941.

348

Harold F. Watson, of Washington, D. C. (Bartlett, Poe & Claggett, of Baltimore, Md., Watson, Cole, Grindle & Watson, of Washington, D. C., and Robert D. Bartlett, of Baltimore, Md., on the brief), for appellant.

Edward G. Fenwick and Charles R. Fenwick, both of Washington, D. C. (Morton H. Rosen, of Baltimore, Md., and Mason, Fenwick & Lawrence and Edward. T. Fenwick, all of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The parties to this suit each use the same trade-mark "Arrow" for their products. Arrow Distilleries, Inc., a Michigan corporation, uses the same on alcoholic cordials and liqueurs, and the Globe Brewing Company, a Maryland corporation, on beer and ale. The suit was originally instituted by the Distilleries Company under R.S. § 4915, 35 U.S.C.A. § 63, to secure relief from an order of the United States Patent Office directing the cancellation of its registered trade-mark upon the petition of the Brewing Company. A counterclaim was filed by the Brewing Company in the pending suit, charging infringement of its prior registered trade-mark, and this charge the Distilleries Company denied. Subsequently the Distilleries Company withdrew its cause of action under R.S. § 4915 and amended its complaint so as to charge infringement of its trade-mark by the Brewing Company. The position of the Distilleries Company has always been that there was no infringement on either side, but it charged infringement to meet the contingency of a contrary decision by the court so that in such event it might obtain affirmative relief with respect to those territories in which it had first made use of the trade-mark. The Brewing Company has, therefore, become in effect the plaintiff in the suit. No substantial evidence of confusion in the public mind between the parties or their product was offered, and the suit has become one of technical trademark infringement in which the Brewing Company seeks to show that its trade-mark "Arrow", as applied to beer, has such a degree of distinctiveness that the public will be led to attribute a common origin to cordials and liqueurs sold under the same designation.

The Brewing Company and its predecessors have been engaged in the brewing and distribution of beer since prior to 1913. In that year, the trade-mark "Arrow" was adopted for their product. Since that date the mark has been continuously used, having been applied to non-alcoholic beer during the prohibition period. It was registered in the Patent Office for malt beverages five times in the years 1914, 1921, and 1937. The District Court found that the business has extended to nineteen states, most of them on the eastern seaboard or in the southern part of the United States. 96% of the business has been done in Maryland, Virginia and the District of Columbia. The sales from 1933 to 1939 amounted to nearly $20,000,000. More than $2,000,000 has been spent since 1922 in advertising "Arrow" beer.

The Distilleries Company was formed in the fall of 1933 and began to make and sell "Arrow" cordials and liqueurs in 1934. The name was adopted because one of the organizers had been connected with the Arrow Distilleries of Peoria, Illinois, before national prohibition. In 1935 registration of the trade-mark "Arrow" was se-

cured, and shortly thereafter, the present controversy was begun. The District Court found that the products of the Distilleries Company have been sold in thirty-eight states of the union. By far the greater part of the business has been done in New York, New Jersey, Illinois, Michigan, Minnesota and Wisconsin. Total sales amounted to more than $3,500,000 between 1934 and 1938, of which nearly $3,000,000 was received for goods bearing the "Arrow" trade-mark. More than $900,000 has been spent in advertising and in sales promotion, the greater part to encourage the sales of the "Arrow" brand of goods.

The District Judge held that the beer and ale made by one party were goods of the same descriptive properties as the cordials and liqueurs made by the other, and that there was likelihood of confusion, since the products of both were being sold under the same trade-mark in the same sort of store. But he held that each of the parties was the owner of a valid trade-mark, as applied to alcoholic beverages, and was entitled to its exclusive use in those states of the union in which it was the first user; and hence that the use of the mark therein by the opposing party constituted infringement. The Globe Brewing Company was enjoined from employing the trade-mark or the representation of an arrow on alcoholic beverages of any description within the states in which the Distilleries Company was found to be the prior user; and the Distilleries Company was similarly enjoined with respect to the territory in which it was found that the Brewing Company was the prior user. The Distilleries Company was also enjoined from employing its corporate title in connection with alcoholic beverages of any description in the last-mentioned states unless the labels employed in connection with the goods should bear a notation indicating that the Distilleries Company had no connection with the manufacturer of Arrow beer.

No appeal was taken from the decree by the Brewing Company, but the Distilleries Company appealed on the grounds (1) that there was no infringement by either party, and (2) that if technical infringement existed, the decree should be modified by taking certain territory from the field allotted to the Brewing Company and giving it to the Distilleries Company.

The crucial issue in the case is whether the word "Arrow" is a word of such distinctive character, when adopted as a trade-mark for one kind of intoxicating liquors, that it cannot be used on any other kind without creating the belief that both spring from a common source; or, on the other hand, is a word like "Standard", or "Gold Medal", or "Blue Ribbon", which has been adopted by many persons as a trade-mark for articles of divers kind that it does not signify the goods of any one user. The question is important because, in determining the extent of the field of exclusive occupation, a name in the first class is accorded liberal treatment in the law of trade-marks, while a name in the second class is narrowly restricted to the particular kind of goods for which it is used by its owner. The District Judge held that "Arrow" is a name of the first class, specifically stating that it is not like the illustrative words of the second class above set out.

In the Restatement of Torts it is said that in determining whether one's interest in a trade-mark is protected with reference to the goods on which it is used, one of the important factors is "the degree of distinctiveness of the trade mark". § 731 (f). " * * * The more distinctive the trade mark is, the greater its influence in stimulating sales, its hold on the memory of purchaser and the likelihood of associating similar designations on other goods with the same source. If the trade mark is a coined word, such as Kodak, it is more probable that all goods on which a similar designation is used will be regarded as emanating from the same source than when the trade-mark is one in common use on a variety of goods, such as 'Gold Seal' or 'Excelsior'."

The decisions show that the adoption by a person of an arbitrary, fanciful or distinctive word, such as Aunt Jemima, Kodak, Rolls Royce, to indicate his goods, is attended by a monopoly of use in a wide field. Many of these decisions are listed in Standard Oil Co. of N. Mex. v. Standard Oil Co. of Calif., 10 Cir., 56 F.2d 973, 978, note 1. See, also, California Packing Corp. v. Halferty, 54 App.D.C. 88, 295 F. 229; Elgin American Mfg. Co. v. Elizabeth Arden, 83 F.2d 687, 23 C.C.P.A., Patents, 1168; Four Roses Products Co. v. Small Grain Distillery Co., 58 App.D.C. 299, 29 F.2d 959. Thus, it was held in Standard

Oil Co. v. California Peach & Fig Growers, D.C.Del., 28 F.2d 283, that the words "Nujol Treated Figs", used as a trade-mark for a laxative, infringed the established trade-mark "Nujol", as applied to refined mineral oil intended for a like purpose, although it was obvious that no one receiving a package of figs would believe that he was getting a bottle of oil. The arbitrary name had come to indicate so clearly the producer of the oil that its use upon figs would probably lead purchasers to conclude that both articles had a common origin.

The narrow scope which the courts have accorded to words in common use by many manufacturers on a large variety of goods is illustrated in France Milling Co. v. Washburn-Crosby Co., Inc., 2 Cir., 7 F.2d 304, where the words "Gold Medal", as applied to "straight" wheat flour, were held not to be infringed by the words "Gold Medal" as applied to prepared "pancake" and buckwheat flour. During a period of forty-four years the words had been registered more than sixty times and applied to many diverse articles. The court said (7 F.2d page 306):

"To take another view of the matter, the degree or exclusiveness of appropriation accorded to the originator of a tradename often varies with the kind of name he originates. If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many differing kinds of business. Of this 'Kodak' is a famous example, and the English courts have prevented one from putting forth Kodak bicycles, at the suit of the originator of the name for a totally different article. * * *

"One who devises a new, strange, 'catching' word to describe his wares may and often has by timely suit prevented others from taking his word or set of words to gild the repute of even wholly different goods (cases supra); but one who takes a phrase which is the common place of self-praise like 'Blue Ribbon' or 'Gold•Medal' must be content with that special field which he labels with so undistinctive a name."

The word "Simplex", which was considered in American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317, has had a similar history. The Simplex Railway Appliance Company and its successor used it as a trade-mark on certain railway appliances for twenty years, and its successors then made application to the Patent Office to register it as a trade-mark for other appliances of the same general character. Registration was refused on the ground that "Simplex" was the predominating word in the name of several corporations. In a subsequent suit under R.S. § 4915 brought by the applicant against the Simplex Electric Heating Company, which had also used the word as a trade mark on insulated wire and other goods, it transpired that the word comprised the whole or a part of sixty registered trade-marks, as applied to many classes of merchandise. The Supreme Court held that registration should have been granted because the word had been used so many times in so many different ways that it was no more calculated to denote the defendant corporation than any of the other corporations which had embodied it in their names. In the opinion (269 U.S. page 384, 46 S.Ct. 160, 70 L.Ed. 317), examples of other words of similar character, such as Anchor, Champion, Pride, Star, etc., were given.

The restricted field vouchsafed to popular trade-marks devoid of distinctiveness, is disclosed by many decisions denying infringement despite the use of the same word by different persons on goods of the same general character; for example, "Nox All" on mixed stock food and on wheat flour—Pease v. Scott County Milling Co., D.C. E.D. Mo., 5 F.2d 524; "Par" on hand soap and on granulated soap—Treager v. Gordon-Allen, 9 Cir., 71 F.2d 766; "Sun-Maid" and "Sun-Kist"—California Packing Corp. v. Sun-Maid R. Growers, 9 Cir., 81 F.2d 674; Id., D.C., 7 F.Supp. 497; "Club" on crackers and on cookies—Keebler-Weyl Baking Co. v. J. C. Ivins' Son, D.C. E.D. Pa., 7 F.Supp. 211; "Trump" on candies and on cookies—Mason, Au & Magenheimer C. Co. v. Loose-Wiles Biscuit Co., D.C. E.D. N.Y., 1 F.Supp. 755; "Emerson" on electric motors and on radios—Emerson Electric Mfg. Co. v. Emerson Radio & P. Corp., 2 Cir., 105 F.2d 908; Id., D.C. S.D. N.Y., 24 F.Supp. 481.

The courts have considered the distinctiveness of trade-marks in factual situations very similar to that in the case at bar. Thus it was held in Pabst Brewing Co. v.

Decatur Brewing Co., 7 Cir., 284 F. 110, that the name "Blue Ribbon", which had been registered more than sixty times as a trade-name for various articles of commerce, and had been established by the complainant as a trade-name for beer, was not infringed by its use as a trade-name for malt extract; and in Burger Brewing Co. v. Maloney-Davidson Co., 6 Cir., 86 F.2d 815 that the trade-mark "Buckeye", as applied to malt syrup, was not infringed by the use of the same trade-mark on beer. The word "Buckeye" had been registered in the Patent Office more than one hundred times by many different persons for a great variety of goods. In Ph. Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699, the court concluded that there was little likelihood of confusion from the use by one person of labels employing the word "Century" on distilled alcoholic liquors, and the use by another of the same word on several malt beverages. In contrast with these cases is Anheuser Busch, Inc., v. Budweiser Malt Products Co., 2 Cir., 295 F. 306, where it was held that the owner of the distinctive word "Budweiser", as a trade-mark for beer and malt liquors, was entitled to protection against the use by another of the name "Budweiser Malt Syrup".

It must be conceded that in some of the cited cases the classification of goods has proceeded on very fine lines, and it should be understood that these instances are used to illustrate a principle rather than as examples to be slavishly followed in the future. Moreover, it should be borne in mind that the distinctiveness of a mark is only one of the factors to be taken into account in deciding a question of infringement. Nevertheless the rule that coined or fanciful marks or names should be given a much broader degree of protection than words in common use is sound, for it recognizes not only the orthodox basis of the law of trade-marks that the sale of the goods of one manufacturer or vendor as those of another should be prevented, but also the fact that in modern business the trade-mark performs the added function of an advertising device, whose value may be injured or destroyed unless protected by the courts. Schechter, The Rational Basis of Trade Mark Protection, 40 Harvard Law Review 813; Restatement of Torts, § 715 (b).

In deciding the question in the instant case, two sets of facts, established by the evidence, should be borne in mind: (1) It was shown that the manufacture of beer and ale and the manufacture of cordials and liqueurs are separate industries. In the first, the product is fermented or brewed, while in the second it is distilled. The two industries may not be lawfully maintained on the same premises under the federal statutes. An experienced witness testified without contradiction that he knew of no person who made both kinds of goods. It goes without saying that a purchaser desiring an article in one class could not be misled into accepting an article in the other. (2) The word "Arrow" is in very common use as a trade-mark. The word itself or the pictorial representation of an arrow has been registered ninety-eight times as a trade-mark for various articles, including collars, shirts, playing cards, toggle bolts, sewing machines, condensed milk, pickles, noodles, etc., etc. Nine times it has been registered for alcoholic beverages, including ale, beer and whiskey. Obviously the word has a common appeal to advertisers, possibly because it suggests the quality indicated by the slogan of Arrow beer that "it hits the spot".

We think it belongs to the class of trade-marks whose exclusive field is closely restricted. The inferences, to which the name naturally gives rise, have encouraged so wide a use and so frequent a registration for many different articles that there is little danger that its mere use, even in the closely related fields of beers and cordials, will indicate a common origin or endanger the reputation of the plaintiff's goods. As we have shown, no actual confusion or intent to deceive is indicated by the evidence. The conclusion is that each party may continue to use the word "Arrow" as a trade-mark for its goods without infringement of the rights of the other. The decree of the District Court must be reversed and the case remanded with directions to dismiss the complaint of the plaintiff and the counterclaim of the defendant.

Reversed and remanded.