**SOY FOOD MILLS, Inc., v. PILLSBURY MILLS, Inc.**

No. 8996.

Circuit Court of Appeals, Seventh Circuit.

April 10, 1947.

George F. Williamson and Bradshaw Mintener, both of Minneapolis, Minn., and Leo F. Tierney, of Chicago, Ill., for appellant.

Truman A. Herron, of Cincinnati, Ohio, and Lee J. Gary, of Chicago, Ill. (Wood, Arey, Herron & Evans, of Cincinnati, Ohio, of counsel), for appellee.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a decree rendered in an unfair competition and infringement of trade-mark and copyright suit wherein each party sought relief from the other.

The plaintiff charged defendant with unfair competition and with the infringement of its copyright, "Golden wheat-soy Mix"

and also with infringement of its copyright, "Golden Soy Griddle Cake Mix."

Defendant filed an answer and also a counterclaim. It denied the facts upon which plaintiff based its prayer for relief, and also sought affirmative relief, consisting of an injunction against plaintiff's use of its trade-mark, "Golden Bake" and from other unfair methods of competition and from advertising or attempting to sell its product as defendant's made product. It also sought an injunction to stop plaintiff's alleged infringement of defendant's registered labels and its trade-marks.

Both sides also sought damages and an accounting.

After an extended trial, the Court found in plaintiff's favor on some of its unfair competition charges and against it on certain of its other charges. It found against the defendant on all of the material and controverted charges set forth in its counterclaim.

The importance of accuracy justifies our setting forth in haec verba, the terms of the decree. We quote therefrom.*

Both parties are engaged in selling a flour mix. The label copyrights and trade-marks involved, and the alleged unfair competition turn on the cover designs and words appearing on the cartons that carry the flour.

---

* "* * * * it is

"Ordered, adjudged and decreed as follows:

"(1) That a writ of perpetual injunction issue herein strictly enjoining and restraining * defendant, Pillsbury Mills, Inc., * * * and all in privity with it from (a) offering for sale and/or selling to the public a pancake, waffle and/or muffin flour blend containing a Soy bean ingredient under the trade-mark Golden Bake Mix or any other trade-mark which is a colorable imitation or close simulation of plaintiff's trade-marks, Golden wheat-soy Mix and Golden Mix, except that nothing herein contained shall prevent defendant from using the trade-mark Golden Bake;

"(b) offering for sale and/or selling to the public a pancake, waffle and/or muffin flour blend containing a Soy bean ingredient packaged in a carton or other container, the exterior of which has a yellow, blue, white and red dress and style and/or one in which the respective colors and/or design elements are so arranged and disposed as to closely resemble the dress and style and arrangement and disposition of colors and/or design elements on plaintiff's Golden wheat-soy Mix package and from otherwise unfairly competing with the plaintiff in the dress and style of its package;

"(c) reproducing and publishing labels for a pancake, waffle and/or muffin flour blend in infringement of plaintiff's label copyright No. KK 21789 entitled 'Golden wheat-soy Mix';

"(d) utilizing in the sale of a pancake, waffle and/or muffin flour blend containing a Soy bean ingredient the slogan 'The New Soy Taste Sensation,' or any other slogan which is a colorable imitation or close simulation of plaintiff's trade-mark slogan, 'The Soy Bean Taste Sensation.'

"(2) That plaintiff * * * recover from defendant * * * the profits and damages accruing by reason of the unfair competition of the defendant * * * and the profits, damages accruing by reason of the unfair competition of the defendant * * * and the profits, damages and reasonable attorneys' fees for the infringement by defendant of plaintiff's aforesaid identified label copyright. * * *

"(3) That * * * defendant * * * deliver up for computation and destruction all labels, cartons, packages, cases, signs, and other advertising matter which in whole or in part infringe plaintiff's aforesaid label copyright.

"(4) That plaintiff recover from defendant its taxable costs herein.

"(5) Plaintiff has not sustained its charge of infringement of its label copyright No. KK 18584 entitled 'Golden Soy Griddle Cake Mix' and plaintiff's complaint as to infringement of said copyright should be and the same is hereby dismissed at the plaintiff's costs.

"(6) That the defendant, Pillsbury Mills, Inc., has failed to sustain any of the charges of trade-mark infringement, unfair competition and infringement of label copyrights set up in the counterclaim and supplemental counterclaim and said counterclaim and supplemental counterclaim should be and the same hereby are dismissed at the defendant's costs.

"(7) That the plaintiff has failed to sustain its charges of trade-mark infringement as distinguished from its charges of unfair competition against defendant and plaintiff's complaint as to trade-mark infringement should be and the same is hereby dismissed at the plaintiff's costs.

"Walter J. LaBuy,
"United States District Judge."

Reproduced herewith, is the trade-mark, Golden Soy, and trade-mark, Golden Mix and the label copyright, Golden wheat-soy Mix, all plaintiff's.

Defendant argues that certain findings are wholly unsupported by evidence and must be rejected by us. It is this contention which makes this appeal so involved.

Defendant's 1935 trade-mark is herewith reproduced and the label which it used after August, 1943 is also reproduced. The colors are of necessity eliminated.

The Court made findings which it subsequently modified upon defendant's motion. These findings are controlling with us wherever there is evidence to support them, even though the evidence be strongly disputed.

factually and so difficult of satisfactory statement and determination. For example, we are asked by plaintiff to accept the Court's appraisal of the defendant's trade-mark, Golden Bake, and its denial of defendant's right to add to the words, "*Golden Bake*," the word, "*Mix*."

It also asks us to accept the Court's finding that defendant adopted Golden Bake Mix deliberately and with knowledge of plaintiff's product and its name, Golden wheat-soy Mix. It bases its case largely on this adoption of names, which, together with the carton and label so similar to plaintiff's cartons that defendant was able to, and did, pass off its product as plaintiff's product. Its charge of unfair competition is thus established, so plaintiff argues.

Defendant, on the other hand, argues that there is no evidence, other than the labels themselves which are before the Court and which we can evaluate as well as the District Court, which supports the finding of unfair competition by defendant. The same is true of its asserted claim of protection under its trade-mark, "*Golden Bake.*" It contends that there is nothing sacrosanct about a district court finding when that finding deals with a trade-mark and a trade-

name. In short, this court may say, and in fact must decide, whether defendant, whose use of "Golden Bake" is clear, may not add the word, Mix, even though plaintiff used the words, "Golden wheat-soy Mix" between the date when defendant first used Golden Bake and the date when its Golden Bake Mix appeared. The evidence, so it is argued, is of equal persuasiveness in both courts. Just as a finding in the District Court is not conclusive where the evidence is by deposition—equally open to both courts—so is the question presented by the use of trade-names open to both lower and appellate courts for their separate determination as to confusing similarity.

We are of the opinion that not only is the factual question thus open to the appellate court, but it is our unavoidable duty to examine the two trade-marks or trade-names or copyrights and decide the question of fact for ourselves. We must, however, give to the District Court's opinion on such issues, consideration and weight because of its source.

In the last analysis, our examination of the carton and of the names and the date of appearances of said cartons convinces us the controversy turns largely upon the use of the word, Golden. It is clear that the defendant's objectionable cartons and words selected by it to describe its product do not constitute a Chinese copy of plaintiff's carton or trade-mark or trade-name or advertisement. Likewise, plaintiff did not use defendant's prior chosen trade-mark, Golden Bake. On the question of unfair competition we find the colorings of cartons used by the plaintiff are not exactly similar to those used by the defendant nor were defendant's exactly similar to those used by plaintiff.

Rather important is the matter of dates. Defendant was an old manufacturer in the field. It was one of the largest pancake flour manufacturers in this country. It had been a leader in the flour business, including pancake flour, for many years—over half a century. Plaintiff appeared in the commercial field in 1942 and enlarged its business in 1943. It did not manufacture its flour but caused a flour mill to prepare its product in accordance with a formula which it submitted.

Such competition as existed between the parties arose in 1943. At this time the country was at war and conservation of flour was a government objective. This was accomplished in part by the introduction of soy bean flour into the pancake flour mixes.

Plaintiff insists, that its formula has great merit. The Court's finding in respect thereto is conclusive. We accept it.

Soybean, as an addition to the wheat or other flour used in pancake or muffin flour, while not new in 1942, became a more important factor during these war years. Whether the public was moved by patriotic sentiment or a fondness for soy flour in pancake mixes is immaterial. It was an ingredient which both companies could use and in the proportion which each chose. The more used, the better the Government liked it. Plaintiff's percentage of soy flour was relatively small. Defendant used as much as twenty percent in its pancake flour mix.

Plaintiff was not the first to use soy bean flour in pancake flour nor did it precede the defendant in its use in this field. There were also other pancake flour manufacturers who made a pancake mix with soybean additions, prior to 1942.

Over-emphasis has been given to the contents of the mix, so we think. The controversy is over the words of the trade-marks, together with the colors which appear on the cartons in which the mix was sold. The litigation is over the use of pancake flour mix *packages*. *It is not over the pancake flour.*

It is important to bear in mind that pancake flour *mix* may have ingredients other than soy bean flour. The word, Mix, indicates merely that it is not a straight wheat flour, or buckwheat flour, or rice flour, but has an additional ingredient.

Defendant contends that plaintiff has been guilty of unethical conduct aside from its unfair competition which must preclude it from obtaining any affirmative relief in a court of equity. In other words, plaintiff's hands are not clean.

It asserts first, that plaintiff used the word, Mills, in its name (Soy Food Mills, Inc.) to inform the public falsely that it

made its own product whereas it never made any of its product but purchased its mix from a flour mill which made the product for it.

Second, defendant argues that the United States Government instituted a libel against the plaintiff's pancake flour, charging the use of false and deceiving advertising matter on the cartons containing its pancake flour mix, and obtained a decree enjoining plaintiff from selling its product in such cartons because said cartons carried false and deceptive advertisements and because plaintiff falsely asserted the existence of ingredients not in its mix and attributed to its product virtues which were untrue. The court, later, permitted plaintiff to sell its products in cartons with the objectionable advertisements eliminated, but only under the supervision of the "Food and Drug Administration, Federal Security Agency" and upon plaintiff's paying the "transportation, salary and such other necessary expenses" "incurred by the Administration in connection with said supervision." This concession by the government to the plaintiff was due to the government's desire to avoid the loss of any wheat flour.

In the development of its trade-mark and trade-name, plaintiff first used Golden Soy. It used this label on its cartons. It neglected to publish notice of such copyright on 1,000,000 of its cartons. Defendant argues that plaintiff lost its copyright thereby and in legal effect dedicated it to the public. Thompson v. Hubbard, 131 U.S. 123, 150, 151, 9 S.Ct. 710, 33 L.Ed. 76. Defendant, however, goes further and contends that plaintiff could not regain its rights thus lost by failure to give notice to the public, by securing another trade-mark covering the same subject. It relies on Universal Film Mfg. Co. v. Copperman, 2 Cir., 218 F. 577 and Sieff v. Cont. Auto Supply, Inc., D.C., 39 F.Supp. 683, in addition to the Thompson v. Hubbard case, supra.

The Court made twenty-three separate findings each of which specifically negatived the defendant's contention respecting its product and sustained the plaintiff's view as to the validity of its claim of the unfair competitive methods by the defendant. It also made eight conclusions of law respecting the plaintiff's claim and nine conclusions respecting the defendant's counterclaim, all favorable to the plaintiff.

Subsequent to the making of said findings and conclusions the defendant submitted affidavits and asked for the modification of said findings and particularly in respect to defendant's registered trade-mark, Golden Bake, the substance of which objectionable findings were, that defendant has not been associated with Golden Bake pancake flour except to the minimum extent required by law and the public does not know or recognize Golden Bake, to have been the product of the defendant company; that it never advertised pancake flour under the name of Golden Bake, and enjoyed no good will in the mind of the public. It also found that Golden Bake was not sold in competition with plaintiff's products and that it was discontinued in the latter part of 1942, prior to the introduction of plaintiff's product, Golden Soy.

We quote from two of the Court's conclusions on defendant's counterclaim:

"1. Defendant's trade-mark, Golden Bake for pancake flour, is a descriptive trade-mark and its registration under the Trade Mark Act of 1905 [15 U.S.C.A. § 81 et seq.] is invalid."

"3. There has never been any goodwill associated with the business of defendant, Pillsbury Flour Mills Company, in its product, Golden Bake."

We also quote the following conclusions of law respecting plaintiff's trade-mark and copyright:

"3. Plaintiff, Soy Food Mills, Inc., is the possessor of a valuable goodwill in and to its trade-marks, Golden Soy, Golden wheat-soy Mix, in and to the original dress and style of the carton labels under which its pancake flour product is sold and in and to the business which it has established in this product."

"6. Plaintiff's label copyright registration No. 21789 is a good and valid label copyright and has been infringed by the defendant."

The court made four findings which read as follows:

"11. The manufacture, offering for sale, and sale of Golden Bake was discontinued in the latter part of 1942 prior to the intro-

duction on a substantial basis of plaintiff's product, Golden Soy."

"15. Plaintiff's Golden Soy and Golden wheat-soy Mix and defendant's Wheat-Soy-Rice and Golden Bake Mix have been and are being offered for sale and sold to the public as specialty products having improved characteristics over ordinary pancake flour."

"18. There is no evidence that anyone has been confused or deceived by any resemblance between the trade-mark or package dress and style of defendant's Golden Bake and plaintiff's Golden Soy, Golden wheat-soy Mix and Golden Mix for muffins."

"22. Defendant is the owner of label registrations Nos. 48005, 52258, 52874, 53922, 42180, KK 8635 and KK 22293 for its Sno-Sheen, Minitmix, Golden Bake and Golden Bake Mix labels. None of said registrations has been infringed by plaintiff's Golden Soy, Golden wheat-soy Mix or Golden Mix for muffins labels or any of them."

After their entry the Court heard argument and ordered each one stricken. It also struck its previously entered conclusions of law Nos. 4 and 5, which read:

"4. Defendant, Pillsbury Flour Mills Company, has been guilty of unfair competition in creating a state of public confusion and deception between its product, Golden Bake Mix, and plaintiff's products, Golden Soy and Golden wheat-soy Mix, and in passing off its product as that of plaintiff."

"5. Defendant's conduct has been deliberate and with knowledge of plaintiff's rights."

It did not, however, strike either conclusions of law No. 1 or No. 3 which it entered on defendant's counterclaim.

Defendant argues that these modifications and changes in the findings were made necessary because of the total absence of evidence to support them. Plaintiff, however, contends that though the finding was stricken respecting Golden Bake, the Court did not change certain conclusions which were based on the said findings before they were stricken or changed. This the defendant contends was an oversight on the part of the Court. In other words, in striking out the findings the Court overlooked the fact that it had inserted conclusions inconsistent with its action striking the findings.

We are satisfied that where a finding is stricken when the court's attention is directed specifically to it, the retention of a conclusion based thereon, was an oversight or an error. The conclusion must be ignored unless other findings support it.

Two questions, both of which might well be said to be vexatious, intrude themselves into our consideration of the case: (a) why did plaintiff adopt the word, Golden, and simulate defendant's use of the same word in the trade-mark "Golden Bake." We have found no satisfactory reason. Defendant had been using its trade-mark for six years. It was duly registered. It could not fairly be said to be descriptive of the product, although the pancake may suggest the appropriateness of the word, golden. If descriptive, it would be equally offensive and objectionable, in plaintiff's as in defendant's name. Its prominence and location are the same in plaintiff's as in defendant's trade-mark.

(b) The other query arises out of defendant's use of the word Mix. Why did it use this word? It offers an excuse which is not unreasonable. It points to the action of the Millers Association following the ruling of the U. S. Food and Drug Administration. It distinguished the product more specifically from a flour made up entirely of wheat. Moreover, in two prior instances, one of which appeared as early as 1933, it used the word, Mix, on its cartons.

It is sufficient to observe that if the term, Golden Bake, is an invalid trade-mark because it is purely descriptive, the same applies with equal effect to plaintiff's copyright "Golden wheat-soy Mix."

Golden Bake was the trade-mark name which defendant selected and registered in October, 1935. It was the name used continuously thereafter. It applied to pancake flour which contained soy bean flour or to any other ingredient so used. As to this the evidence is conclusive.

Defendant, however, changed the name it used on the cover of the carton containing its pancake flour, in 1943, by adding the

word, Mix. The words which plaintiff argues infringes its label copyright, "Golden wheat-soy Mix," were "Golden Bake Mix."

Plaintiff contends that the addition of the word, Mix, occurred as a result of action taken by the United States Food and Drug Administration, which in 1941, gave standards of identity for wheat flour and related products. It, however, did not include in its order any definition of pancake flour. As a result, the mills of the United States, making flour, concluded that when pancake flour with another ingredient like soybean flour added, was made and sold there should be added the word, Mix, to distinguish it from straight flour. This action was taken by the millers belonging to the Millers National Federation of the United States in December, 1943. Defendant added the word, Mix, shortly thereafter.

With this preliminary statement of facts we now take up, in the order of the decree, the various provisions so far as said decree runs against the defendant.

(a) The Court in said decree first restrained defendant from selling to the public a pancake or waffle or muffin flour blend under a trade-mark, Golden Bake Mix or to use any other trade-mark which is a colorable imitation of or a close similitude to plaintiff's copyright, Golden wheat-soy Mix and trade-mark, Golden Mix.

█ We are of the opinion that on the showing made, this part of the decree must fall for several reasons. (a) The words, Golden Bake Mix, must be read in connection with the word, "Pillsbury's" appearing in large letters on the top line, above the words, Golden Bake Mix.

A second reason for our conclusion is to be found in the fact that defendant had the right to use its valid trade-mark, Golden Bake. The addition of the word, Pillsbury's, at the top of this trade-mark and the addition of the word, Mix, at the end of said trade-mark, were a legitimate extension of defendant's use of its said legal trade-mark and of its rights arising therefrom.

A third reason for this conclusion, is the fact that if there be confusion in the two carton covers, either in color effect or the use of words or both, said confusion is due to plaintiff's adoption of defendant's trade-mark with which it was in alleged confusing competition as to the colors, because plaintiff took defendant's prior use of blue and yellow background and built thereon. We are not prepared to give defendant any domination over a competitor through its use of these two colors—or in their position on the carton cover. Yet, it is clear if we were to give to either party any dominance over the other, we would be compelled to give defendant the preference because of its prior use.

Finally, as to the use of the word, Mix, which was used by plaintiff in its exhibit 16 and exhibit 11, and which appeared on the market on its products in June, 1943 and in August, 1943, defendant has this to say (and we accept it): It followed the ruling of the Pure Food and Drug Administration on sales of flour, and the action of the Millers Association based thereon. Moreover, defendant caused hundreds of thousands of test packages to be distributed throughout the country to ascertain the public's reaction to its product. This was before either of plaintiff's exhibits 16 or 11 appeared. In other words, defendant was the first to use the word, Mix. These packages appeared in February, 1943. The word, Mix, also appeared ten years previously, on defendant's product, "Pillsbury's Minitmix."

█ (b) The decree also enjoined defendant from selling pancake flour containing a soybean ingredient packaged in a container the exterior of which has a yellow, blue, white dress and style so arranged as to resemble the dress and style of colors on plaintiff's Golden wheat-soy Mix package and from otherwise unfairly competing with plaintiff in the dress and style of plaintiff's package

An examination of the cartons leaves us entirely cold to the argument that there was unfair competition manifested by defendant's dress as against the plaintiff's dress. There are so many exhibits showing varieties of colors and locations of colors on the cartons that it is quite impossible to reproduce them all. It is sufficient to say on this

issue of unfair competitive practices, based on color and designs, that on the top of defendant's carton, the word, Pillsbury's, was printed in a color different from the words, Golden Bake Mix. The word, Pillsbury's, has a yellow background, and the type is large and its position makes it likely to catch the eye of the customer. The second color across the side of the carton is blue. On this blue background appear the words, Golden Bake Mix. The letters of the word, Mix, are smaller than those used in the words, Golden Bake. On the face of this carton, near the bottom, are written the words, "For Pancakes, Waffles, Muffins."

From 1935 to date of this litigation, defendant used a blue and yellow background for its trade-mark or trade name. It did not materially change the relative position of this background coloring until 1943 when it used yellow at the top across the side of the carton. Upon it was printed the word, "Pillsbury's." Then there was a large blue background below the yellow. Below the blue and about two-thirds of the way down, the background was yellow.

Plaintiff's carton cover colors are primarily blue and yellow. At the top of the carton are printed the words, Golden wheatsoy Mix on a blue background and below the yellow background there is another, a blue background, containing the words, "For Griddle Cakes, Waffles."

The word, Golden, constitutes one line. It is in bold, large print. The words, wheatsoy, are very small. But the word, Mix, on the line below the line carrying the words, "wheat-soy", is in large letters—as large as the letters in the word, Golden.

Between the two blue backgrounds is a circular red colored seal upon which are written the words, "The Soy Bean Taste Sensation." These words were not used by defendant on its carton. Nor is there any seal-like circle. Defendant does have a thin bar of red across the lower yellow background on which appear the words, "with 20% soy."

The words printed on the carton are as important as selection of the colors or the color order.

In attempting to appraise properly the situation disclosed by this record, we are impressed by the fact that unfair competition and trade-mark and copyright infringements do, in the last analysis, involve very similar issues. They are phases of over-zealous competition or they evidence a lack of ethical ideals in business transactions which call for judicial correction. In fact, it has been declared that trade-mark law is but a part of the broader field of the law of unfair competition.

It is not unusual in the course of a trial where much feeling and heat are engendered, and the disputes are irreconcilable that a few salient and vital facts are clearly established, and they point the way to the correct answer to the charges involved. The present suit is no exception to the rule. The facts which are somewhat determinative and which are conclusively established are:

(a) The plaintiff out of the numberless words it could have chosen, selected the word, Golden, which it found already appropriated in this identical field, by the defendant. The Patent Office gave plaintiff notice that defendant, years before, had selected as the first word of its registered trade-mark, the word, Golden. That the word, Golden, as one of a trade-mark name is not merely descriptive, has been held in many courts. N.K. Fairbank Co. v. Luckel, King & Coke Soap Co., 9 Cir., 102 F. 327; N.K. Fairbank Co. v. R.W. Bell Mfg. Co., 2 Cir., 77 F. 869; Fla. Fruit Canners, Inc. v. Atlantic Sea Food Packers, 69 U.S.P.Q. 177; Lowney Co. v. Chandler & Rudd Co., 56 App.D.C. 248, 12 F.2d 189; California Packing Corp. v. Halferty, 54 App.D.C. 88, 295 F. 229; Pontefact v. Isenberger, C. C., 106 F. 499.

We have been unable to find any satisfactory explanation of plaintiff's selection of this word. At least its choice is more consistent with a desire to get into volume business regardless of the methods adopted, than it evidences a good faith effort to select a distinctive name under which to sell its products.

(b) The other striking fact which refutes plaintiff's allegations appearing in its sworn complaint that defendant was making

an inferior product and palming it off as plaintiff's is defendant's conspicuous use of the word, "Pillsbury's" at the top of its carton. Its use not only completely refuted the charge that it was trying to sell its products as plaintiff's but it was most persuasive evidence that its purpose was just the opposite. It leaves no room for doubt as to defendant's motives and its good faith.

(c) In selecting its colors, though deviating somewhat in their order, plaintiff chose to make use of two colors for use as the background of its carton advertisements. One major color was blue. The other was yellow. On these two colors it printed its copyright words. It began with the word, Golden, which was carried in larger type. ·

In selecting blue and yellow, plaintiff must have known that such were the long used colors of defendant. Not that defendant had a monopoly on their use, but if confusion were to result, it was apparent that it must come from the use of the word, Golden, and the use of the similar colors, yellow and blue. Both practices must be charged to plaintiff.

Without greater elaboration of our views we state our conclusions which are:

(1) We are convinced that there was no unfair competition by either party.

(2) We need not determine the validity of defendant's trade-mark, Golden Bake, because we do not believe it was infringed by plaintiff's carton containing the words, Golden wheat-soy Mix.

(3) The coloring of the cartons as well as the other words appearing thereon do not justify a finding of unfair competition by either party.

(4) Defendant's carton containing the words, "Pillsbury's" "Golden Bake Mix" does not infringe plaintiff's copyright, "Golden wheat-soy Mix."

(5) The coloring of the cover of the cartons, together with the words appearing thereon, do not make out a case of infringement by defendant of plaintiff's copyright.

The decree of the district court must be, and is, reversed, with directions to dismiss the plaintiff's complaint and also the defendant's counterclaim.