**LOCKWOOD v. FRIENDSHIP CLUB, Inc.**

Civ. No. 5136.

United States District Court, D. Maryland.

Feb. 14, 1951.

Maurice Cardin, Baltimore, Md., Irving F. Goodfriend, New York City, for plaintiff.

Morris A. Baker, Baltimore, Md., for defendant.

CHESNUT, District Judge.

The complaint in this case relates to alleged unfair competition in the use of a trade name. It seeks an injunction, accounting for profits and damages. The answer denies any unfair competition or interference with the plaintiff's business or injury to him. The case has been heard on the pleadings and evidence in open court. From the evidence I find the following material facts.

The plaintiff is an individual who has conducted two dance or ballrooms in New York, one in the Bronx since 1941, and the other in Brooklyn since 1947, under the trade name of the Friendship Club. He restricts the patronage to middle-aged men and women admitting only those of 28 years of age or older. He sells no liquor and has carefully enforced decorum in its assemblies which are held for the most part only on Friday, Saturday and Sunday evenings from about 8 to 12 o'clock. He imposes no restrictions on personnel of patronage other than the age limit and required decorum in demeanor. He caters to a patronage of middle-aged persons who desire to engage in conservative dancing. For this purpose he engages an orchestra of five pieces. For a period of ten years he has advertised extensively in numerous

daily papers published in New York City, generally by one-inch advertisements, stating the name, Friendship Club, and location of the ballroom and the price of admission, which in recent years has been $1 per person. He has also advertised to some extent in magazines and by radio, and recently to a small extent in Boston and Philadelphia papers, and in 1950 in Washington saying "When in New York Visit the Friendship Club". He has established no similar ballrooms in other cities although the plaintiff testified that he had some time ago considered opening such places in Washington or Baltimore but had found no suitable location. The nature of his business has received some favorable publicity in New York City. The plaintiff states he has spent over $100,000 in advertisement during ten years. His average number of patrons per evening is 750. He has a mailing list made up from names of patrons who have attended his place once or more. He says he has had in ten years more than a million patrons. From this list he produced the names of about ten residents of Baltimore. There is no evidence that they were more than occasional visitors while in New York, or that they went from Baltimore to New York to patronize the plaintiff's ballroom.

The defendant is a corporation formed under the general Maryland corporation laws in December 1949. Its three officers formerly resided in Brooklyn, New York, and two of them had been close associates in the Army overseas. They (one of whom is a professional musician) were interested generally in entering the show business and came to Baltimore in 1948 and in December 1949 had the defendant incorporated and became its officers. One of them at least had on one or more occasions patronized the plaintiff's ballroom in Brooklyn. They were also familiar with other ballrooms conducted by a half dozen or more other persons or corporations in New York City along the same general lines of restricting patronage which pertain to the plaintiff's business. Several of these other ballrooms use a trade name or description similar to that of the Friendship Club, as, for instance, "Friend-

ship Builders Dances"; "Make-A-Friend Club"; "Friendly Club". There was hearsay evidence of Clubs in other places operating under similar names as for instance in Milwaukee, Indianapolis, Boston and Newark, and in some places in California. They said they adopted the name of "Friendship Club" for their corporation because the title seemed a good one as descriptive of the kind of patronage they desired to have but that in view of their prior acquaintance with the plaintiff's business in Brooklyn it is fairly inferable that they were somewhat influenced in adopting the name they did by the favorable publicity and apparent success of the plaintiff's enterprise in New York. They opened their ballroom on January 20, 1950.

The defendant's ballroom is situated at 1717 North Charles Street in Baltimore City. They procured for the purpose an existing ballroom which had been known and still is known as the Famous Ballroom. However, they did not adopt that as the name of their business because several years previously there had been some unfavorable publicity with respect to its orderly conduct connected with or associated in some way with the place, and they desired to have it clearly known that the conduct of the ballroom was under an entirely different management. They advertise by neon sign on a marquee the phrase "Friendship Dances". The name Friendship Club is less conspicuously placed on the premises. Their business is conducted along very much the same lines of the plaintiff's business (and that of numerous others) in New York with the exception that the age limit of their patrons is 25 instead of 28. They have no liquor license and apparently could not obtain one as that locality is now restricted for that purpose. They also enforce decorum although it is said that they do permit a modified and conservative form of jitterbugging, the latter not being allowed at all by the plaintiff. The decorum is well maintained by the defendant in its ballroom. There is convincing evidence to this effect from at least one experienced and disinterested witness of standing and position in the community. The defendant has also ex-

tensively advertised in the local Baltimore papers and by radio and television. During the first year of its business it spent over $6,000 in advertising. At first its patronage was small but has steadily increased until now it has an average attendance of 250 to 300 persons each night. It holds dances sometimes on Wednesday evening but mostly on Friday, Saturday and Sunday evenings from 8 until about 12 or later. The defendant also charges admission of $1 per person including tax. The defendant advertises only locally in Baltimore City and its patronage is limited to residents of Baltimore City and its nearby suburbs, a few miles from the City. It engages a good orchestra.

I find no evidence of any actual past, existing or probable future confusion in the public mind between the business conducted by the plaintiff and the defendant respectively. There is no evidence that the defendant's business has attracted any of the plaintiff's patrons. One witness who had been a patron of the plaintiff in New York and who came to stay in Baltimore for several months in 1950, says he was attracted by the defendant's advertisement and noted the similarity of name and on one occasion visited the defendant's ballroom and inquired if there was any connection between the plaintiff and defendant and was told there was not. No other such instance appears in the evidence. Plaintiff says that he visited the defendant's place a few days ago and recognized and identified one person whom he had seen in his place of business in Brooklyn, New York, and thought he recognized some others but this seems too trivial to be important. On the occasion of this visit the plaintiff as a witness testified that he had had a conversation with the three officers of the defendant during which he said that one or more of them had expressed the thought that they should not have adopted the trade name which had been used by the plaintiff and also that they admitted they had permitted or condoned or did not strictly enforce rules against liquor. But this conversation was denied by each of the three officers of the defendant and I find from a preponderance of the evidence that the plaintiff must have been mistaken in his recollection of the substance of the conversation. Both parties agreed that the conversation was amicable. Bearing in mind that the suit had been instituted by the plaintiff against the defendant on August 22, 1950, and the alleged conversation was only a few days before the actual trial of the case, it seems quite improbable that the defendant's officers would have made the statements attributed to them.

There is no evidence of deceptive or confusing or ambiguous advertising by the defendant and no evidence whatever of any effort on its part to deflect patronage from the plaintiff and no evidence of competition between the parties. In the very nature of the case it seems improbable that there would be. And there is no evidence of copying by the defendant of the plaintiff's advertising symbols, marks or descriptive devices such as existed in the case of the Stork Club, Stork Restaurant v. Marcus, D.C., 36 F.Supp. 90. The only similarity of signs are those that have been mentioned and one more: the defendant does have a sign in its ballroom reading "Be Friendly —Talk to your Neighbor".

On these facts I conclude as a matter of law that the plaintiff is not entitled to the relief sought in the complaint and the latter must be dismissed with costs.

■ We are not dealing with a federally registered trade mark but only a trade name used by the plaintiff which consists of two familiar and generally used English words, which of themselves are fairly descriptive of the kind of business conducted by the plaintiff, and are in no way related to or suggestive of his personal name. The jurisdiction of the court is based only on diverse citizenship and the Maryland law is thus controlling. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ The modern law of unfair competition with respect to trade names has been recently reviewed by the Maryland Court of Appeals in Baltimore Bedding Corp. v. Moses, 182 Md. 229, 34 A.2d 338. It is there pointed out, 182 Md. at pages 236, 237, 239, 244 and 245, 34 A.2d 342, that

the decision in such cases respectively must depend upon their own particular facts; that the law of unfair competition is designed to encourage fair trade and not to hinder competition but that "no one, especially a trader, is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort. This necessarily precludes the trading by one dealer upon the good name and reputation built up by another". And again "The doctrine of unfair competition is based on the principle of common business integrity, and the power of a Court of Equity to uphold this principle has been extended to prevent deception of the general public through the employment of methods which are not on that basis. * * * On the issue of confusion, it is not necessary that there be evidence of actual confusion in order to constitute unfair competition, but evidence only that the similarity of names and the method of operations thereunder, are sufficient to prove liability to deception. * * * Freedom of trade and fair competition are encouraged by the law in every way, and therefore appellant's use of its corporate name should be prohibited only to the extent that it would trespass upon the good name and reputation of appellees, as built up in this particular field of business over a long period of time."

In dealing with a particular case of unfair competition in the use of trade names (proper names) where liability to confusion in the public and prejudice to the plaintiff was found as a fact, Judge Coleman in this court, in the case of Fox Fur Co. v. Fox Fur Co., D.C., 59 F.Supp. 12, 16, some years ago said: "In order to constitute unfair competition with respect to a trade name, two elements must be present: the name must have acquired a secondary meaning or significance that identifies the plaintiff; and the defendant must have unfairly used it or a simulation of it as respects the plaintiff, i. e. must have used it in such a way as will create, or tend to create in the mind of the public, a belief that the name so used is that of the plaintiff or an affiliate of the plaintiff. If these elements exist, then defendant's motive, except in so far as it may affect the extent of allowable damages, is immaterial."

I do not understand that plaintiff's counsel in this case contends that the trade name Friendship Club has acquired a secondary significance such as is here referred to by Judge Coleman; and I find no evidence in this case at least to support such a contention with reference to the defendant's Baltimore patronage.

The name Friendship Club consists of two popular well-known English words which have a pleasant connotation. They are used because they are fairly descriptive of the kind of business activity of both plaintiff and defendant. They are words which naturally come to mind as a pleasant introduction to the activity sought to be encouraged. It is evident that this is so from the wide use of such terms with respect to other similar ballrooms in New York City and elsewhere. The plaintiff says that in consequence of his protest or threat of litigation some of the New York ballrooms which heretofore have used words such as "Friendship" or "Friendly" have changed or modified their designation. It may very well be that names of the same or very similar import in New York City would tend to confusion of the public with respect to the management of the enterprise and possibly inure to the detriment of the plaintiff's patronage; but the evidence does not show that this is or would be so as applied to Baltimore. The evidence in this case indicates clearly enough that persons who patronize defendant's ballroom are those who enjoy reasonably conservative dancing with a good orchestra, where decorum is well observed. In its very nature it seems utterly improbable that residents of Baltimore would go to the expense and loss of time and trouble of making a visit to New York either by automobile, by train, by airplane or by bus for the purpose of enjoying an evening of dancing at a public ballroom open to any person 28 years of age or over without other restriction as to personnel and without special invitation. In other words, the activity is essentially one of a

local nature only. Nor has Baltimore, a City of nearly a million population, been lacking in other ballrooms in the past or at the present time.

There is nothing unique in the kind of ballroom or the restricted patronage thereof which the plaintiff is conducting in New York. As already pointed out there are perhaps a half dozen or more similarly conducted ballrooms in New York; and there are others in other Cities. Clearly the plaintiff has no property right or legal monopoly claim to this kind of business activity.

It seems unnecessary to expand the opinion by reference to other specific cases in other jurisdictions. It may, however, be said that the Maryland law is seemingly in accord with the general law of unfair competition in relation to trade names. In Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347, Judge Soper pointed out that such commonly used trade marks or trade names as "Arrow" were entitled to a much narrower field of protection than other marks or names which are of distinctive or unique character. The facts in Little Tavern Shops Inc. v. Davis, 4 Cir., 116 F.2d 903, were of course quite different from those here involved.

■■ In conclusion it is, I think, sufficient to say that generally speaking in these unfair competition cases the tests to be applied are to determine from the facts whether the adoption of the same trade name or one of similar appearance or sound was (1) by unfair, fraudulent or deceptive action or intention by the defendant; (2) whether the parties are in competition with one another; (3) whether there is reasonably probable public confusion, (even if no actual confusion is specifically proven) and (4) whether the defendant's activity tends to injure the plaintiff's business reputation or impair his patronage. In the instant case, upon a preponderance of the evidence, I do not find any of these conditions to exist.

Therefore, I conclude that the complaint must be dismissed with costs. Counsel may submit the appropriate order in due course.