**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 15-2552

GRAYSON O COMPANY,

Plaintiff - Appellant,

v.

AGADIR INTERNATIONAL LLC,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:13-cv-00687-MOC-DCK)

Argued: March 21, 2017                    Decided: May 5, 2017

Before MOTZ, TRAXLER, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Agee joined.

**ARGUED**: Samuel Alexander Long, Jr., SHUMAKER, LOOP & KENDRICK, LLP, Charlotte, North Carolina, for Appellant. Jesus E. Cuza, HOLLAND & KNIGHT LLP, Miami, Florida, for Appellee. **ON BRIEF**: W. Thad Adams, III, Christina Davidson Trimmer, SHUMAKER, LOOP & KENDRICK, LLP, Charlotte, North Carolina, for Appellant. Monica Vila Castro, HOLLAND & KNIGHT LLP, Miami, Florida, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Grayson O Company ("Grayson O"), a haircare product manufacturer and holder of a registered trademark, brought this trademark and unfair competition action against Agadir International LLC ("Agadir"), a competitor haircare product manufacturer. The district court granted summary judgment to Agadir, finding that Grayson O had failed to show the marks were likely to be confused. For the reasons that follow, we affirm.

I.

Grayson O sells products designed to protect hair from heat during styling. The company owns a federal trademark registration for the mark "F 450." F 450, Registration No. 4,088,857. The registered mark is not stylized and does not claim to protect "any particular font, style, size, or color." *Id.* Although the registered mark contains no degree symbol, the product labels on which the mark appears do contain a degree symbol; the labels also contain a lowercase "f," a stylized "450," and almost no space between the "f" and "450."[1] On its website, Grayson O refers to its products as "f450°"



[1] *f450*, Thermafuse, http://www.thermafuse.com/f450/ (last visited April 3, 2017).

2

or the "fahrenheit 450° Line." *f450*, Thermafuse, http://www.thermafuse.com/f450/ (last visited April 3, 2017).

In the hair care industry, "450" often refers to the temperature to which one can heat hair before it melts or scorches. A number of products that reference 450º Fahrenheit have entered the market. Most relevant to this case, Agadir sells a product called "Hair Shield 450º Plus" or "Agadir Argan Oil Hair Shield 450º Plus," depending on how one reads the label.[2] The "450" on Agadir's label is not stylized. Both Grayson O and Agadir sell their products exclusively at salons, which means their direct customers are salon professionals who then sell the products to their clients.

In July 2012, Grayson O participated in a tradeshow in Las Vegas. At the show, Grayson O employees and customers approached Van Darren Stamey, the president of Grayson O, and told him that "someone is infringing on [your] mark." The alleged infringer was Agadir, which was marketing its products at the show and displaying a prominent "450" sign. On July 25, 2012, Grayson O sent Agadir a cease and desist letter regarding the "F 450" mark and another mark unrelated to this litigation. Agadir

---



[2] *Hair Shield*, Agadir, https://www.agadirint.com/products/?category=Hair Shield (last visited April 18, 2017).

3

responded that it used "450°" on its label not as a mark, but as a "fair and good faith description of the good attached" to the label. Agadir explained that its products protect hair up to 450° Fahrenheit and that no likelihood of confusion existed between its use of the term and Grayson O's mark given the difference between the appearances of the product labels. At some point after receiving the letter, Agadir changed the name of its products from "Heat Shield 450°" to "Hair Shield 450°" and resized the phrase "Hair Shield 450°" on the label.[3]

On December 13, 2013, Grayson O initiated this lawsuit, alleging that Agadir infringed on its trademark and engaged in unfair competition in violation of the Lanham Act and North Carolina law. Upon completion of discovery, Grayson O moved for partial summary judgment on the issue of liability for trademark infringement and unfair competition and sought to enjoin Agadir from using the mark. Agadir also moved for summary judgment.



[3] An undated label prior to change and the current label. A prototype label similar to the current label displayed "Hair Shield 450°" in a smaller font than its final size. After receiving the letter from Grayson O, Agadir instructed its designers to increase the size of "Hair Shield 450°" by 10 percent.

After examining the relevant factors, the district court found that Grayson O had failed to show a likelihood of confusion between the marks. *Grayson O Co. v. Agadir Int'l LLC*, No. 3:13-CV-00687-MOC-DCK, 2015 WL 7149935, at \*11 (W.D.N.C. Nov. 13, 2015). In particular, the court held that Grayson O's mark was conceptually and commercially weak, that the marks were not similar, that there was no evidence of Agadir's intent to infringe on Grayson O's mark, and that there was only *de minimis* evidence of confusion. *Id.* The court denied Grayson O's motion for partial summary judgment and granted summary judgment to Agadir. *Id.* Grayson O timely noted this appeal.

We review de novo the district court's grant of summary judgment to Agadir and its denial of summary judgment to Grayson O. *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006).

II.

"To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove, first, that it owns a valid and protectable mark, and, second, that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (quoting 15 U.S.C. § 1114(1)(a) (2012)). Grayson O has registered its mark, and so we assume the registered mark is valid and protectable. We must focus,

5

therefore, on whether any likelihood of confusion exists between Grayson O's mark and

Agadir's mark.

> To determine if a likelihood of confusion exists, we consider nine factors:
>
> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders;
> (6) the defendant's intent;
> (7) actual confusion;
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

*George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). "Not

all of these factors will be relevant in every trademark dispute, and there is no need for

each factor to support [the plaintiff's] position on the likelihood of confusion issue."

*Synergistic*, 470 F.3d at 171. The parties agree that factors (3), (4), (5), and (8) weigh in

favor of finding a likelihood of confusion because the products are nearly identical and

are sold in similar facilities with similar advertising.[4] The district court, therefore, rested

its conclusion that Grayson O had not established a likelihood of confusion on factors (1),

---

[4] Neither party offers much argument on factor (9), the sophistication of the consuming public. The district court concluded that consumer sophistication did not "figure[] heavily into its likelihood of confusion determination," but found that it weighed "slightly against a risk of confusion." *Grayson O Co.*, 2015 WL 7149935, at *11. Grayson O asserts there is a factual dispute as to sophistication but does not present any argument as to why or how consumer sophistication would materially affect the analysis. In the absence of argument, we assume that the consuming public is of average sophistication, and no more likely or unlikely to be confused than any other consumer group.

6

(2), (6), and (7): the strength of Grayson O's mark, the similarities between the marks, Agadir's intent, and evidence of confusion. Accordingly, we turn to those factors.

A.

The first factor — the strength of Grayson O's mark — is "paramount" in determining the likelihood of confusion. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). If a mark lacks strength, a consumer is unlikely to associate the mark with a unique source and consequently will not confuse the allegedly infringing mark with the senior mark. A mark's strength comprises both conceptual strength and commercial strength. *CareFirst*, 434 F.3d at 269.

i.

"Measuring a mark's conceptual or inherent strength focuses on the linguistic or graphical 'peculiarity' of the mark, considered in relation to the product, service, or collective organization to which the mark attaches." *Id.* (citation omitted) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)). Part of this determination involves placing the mark "into one of four categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *George*, 575 F.3d at 393–94.

Generic marks, like "bleach," are "never entitled to trademark protection" because they are not distinctive. *Id.* at 394. Descriptive marks "merely describe a function, use, characteristic, size, or intended purpose of the product," such as "5 Minute glue" or "After Tan post-tanning lotion." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). Because descriptive marks are not inherently distinctive, they "are

7

accorded protection only if they have acquired a 'secondary meaning,' that is, if 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Id.* (quoting *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir. 1990)).

By contrast, arbitrary, fanciful, and suggestive marks "are inherently distinctive, and thus receive the greatest protection against infringement." *Id.* Arbitrary or fanciful marks typically involve made-up words or words that are unrelated to the product, like, "Exxon®" gasoline or "Apple®" computers. *Id.* "Suggestive marks . . . do not describe a product's features but merely suggest[] them," requiring some imagination on the part of the viewer. *George*, 575 F.3d at 394. Examples of suggestive marks include "Coppertone®, Orange Crush®, and Playboy®." *Id*. (quoting *Sara Lee*, 81 F.3d at 464). Grayson O asserts that its mark is suggestive, and Agadir does not argue to the contrary.[5] Thus, we accept Grayson O's contention that its mark is suggestive.

But we cannot accept Grayson O's conclusion that the fact that its mark is suggestive means that it is conceptually strong. As we explained in *CareFirst*, the suggestive "designation does not resolve the mark's conceptual strength." 434 F.3d at 270. Rather, "'the frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service,' illustrates the mark's lack of conceptual strength." *Id.* (alteration in original) (quoting *Pizzeria Uno*, 747 F.2d at 1530–31). This

---

[5] Additionally, the United States Patent Office (USPTO) registered Grayson O's mark without a showing of secondary meaning. Because the USPTO will not register descriptive marks without a showing that the mark has acquired "secondary meaning," the USPTO's determination that it does not need proof of secondary meaning "constitutes *prima facie* evidence" that the mark is suggestive. *George*, 575 F.3d at 395.

8

is so because consumers are unlikely to associate a mark with a unique source if other parties use the mark extensively. *Id.*

In this case, Agadir has presented numerous instances of other uses of "450" in the haircare industry, including some that were in use or registered prior to Grayson O's registration of its mark. If Grayson O's mark was "truly a distinctive term, it is unlikely that . . . many other businesses in the [haircare] industry would independently think of using the same mark or similar variants of it." *See id.* That so many have done so indicates that "450" and the variation "F 450" are not conceptually strong.

ii.

As for commercial strength, Agadir contends that Grayson O has waived any argument that its mark is commercially strong. A party waives an argument by failing to present it in its opening brief or by failing to "'develop [its] argument' — even if [its] brief takes a passing shot at the issue." *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) (quoting *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012)). Near the conclusion of its opening brief, Grayson O only asserts, without argument or explanation, that "there are genuine issues of material fact as to the commercial strength" of its mark. Although Grayson O briefly addresses and criticizes the district court's commercial strength analysis in its reply brief, these arguments do not appear anywhere in its opening brief. Accordingly, Grayson O has waived its challenge to the district court's conclusion that its mark lacked commercial strength.

But even if Grayson O had preserved its commercial strength argument, we could not reverse the district court's contrary holding. In determining the commercial strength

of a mark, a court considers whether "a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *CareFirst*, 434 F.3d at 269 (quoting *Perini*, 915 F.2d at 125). The commercial strength inquiry is analogous to the inquiry for secondary meaning. *Id.* at 269 n.3. Thus, the factors to be considered include: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Perini*, 915 F.2d at 125 (discussing secondary meaning).

As the district court explained, Grayson O's sales and advertising expenditures were "minimal" when compared to the "multi-billion dollar hair care industry." *Grayson O Co.*, 2015 WL 7149935, at *6. Furthermore, Grayson O offered no evidence of "unsolicited media coverage," "attempts to plagiarize the mark," or "consumer studies linking the F 450 mark or the '450' term to Grayson O," despite the fact that Grayson O has been using the mark for four years. *Id.*

In its reply brief, Grayson O argues that the district court erred in failing to limit its advertising and sales analysis to products sold exclusively in salons. In particular, Grayson O asserts that the district court should have compared its advertising and sales to those of Agadir's product. We do not understand (and Grayson O provides no assistance) how this comparison would shed light on whether "a substantial number of present or prospective customers" would connect the mark solely to Grayson O. To the extent that Grayson O would have preferred that the court compare its sales and expenditures to the

10

smaller market of products sold exclusively in salons, Grayson O does not indicate, and the record does not disclose, what that market was or what evidence Grayson O presented on this point.[6]

For these reasons, like the district court, we find that Grayson O's mark was both conceptually and commercially weak.

B.

We next address the second factor — the similarity of the two marks. In testing for similarity, "we must examine the allegedly infringing use in the context in which it is seen by the ordinary consumer." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992). It is undisputed that Grayson O and Agadir do not sell their products in the same salons. Thus, relying solely on a side-by-side comparison of the marks to determine the likelihood of confusion would be inappropriate. *See What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi*, 357 F.3d 441, 450 (4th Cir. 2004). But the appearance of the marks is still relevant in assessing whether the marks are sufficiently similar that a customer would confuse them.

The Grayson O mark that "is seen by the ordinary consumer" differs notably from the mark that Grayson O registered, and both Grayson O marks differ from Agadir's mark. Grayson O's registered mark is "F 450," which has a clear word-space between

---

[6] Grayson O also contends in its reply brief that the district court erred by comparing its advertising expenditures to those of the greeting card industry. In fact, the court simply recognized that in *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 243–44 (4th Cir. 2007) (unpublished), we had found that similar advertising expenditures in a multibillion dollar industry did not demonstrate commercial strength. The district court did not err in analogizing these circumstances to those in the case at hand.

11

the uppercase "F" and the "450." However, Grayson O's product label is "f450º," which has only a miniscule letter-space between the lowercase "f" and the "450" and includes a degree symbol. By comparison, Agadir's label reads "Hair Shield 450º Plus" with no "F" and three additional words. The text of Agadir's mark thus differs both from Grayson O's registered mark and from the mark Grayson O uses on its label. The only textual similarity between Agadir's label and Grayson O's label is "450º," and the only textual similarity between Agadir's label and Grayson O's registered mark is "450."

Nevertheless, Grayson O contends that the number "450" constitutes the "dominant portion" of its mark and that the marks are similar because this dominant portion also appears on Agadir's label. "The dominant feature of a trademark is whatever is most noticeable in actual conditions." 5 Callman on Unfair Competition, Trademarks and Monopolies § 21:18 (4th ed.), Westlaw (database updated Dec. 2016) (emphasis omitted). Courts give the dominant part of a mark more weight when assessing similarity because consumers are more likely to confuse marks with dominant similar features than marks with less noticeable similar features. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). While in some cases a court can easily identify a mark's dominant portion, a court need not engage in a technical dissection of a mark in order to deem one part dominant. *See, e.g.*, *George*, 575 F.3d at 396. Such a requirement would defeat the purpose of determining whether the allegedly infringing use would confuse consumers, who typically do not engage in nuanced, piecemeal comparisons of marks.

In support of its argument that "450" constitutes the dominant portion of its mark, Grayson O heavily relies on *Pizzeria Uno* and *Synergistic*. In those cases, we compared marks consisting of two independent words: "Pizzeria Uno and Taco Uno" and "Glass Doctor and Windshield Doctor." Unlike the marks in *Pizzeria Uno* or *Synergistic*, Grayson O's mark appears in the marketplace as a single word, "f450." *Cf. Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 159 (4th Cir. 2014) (rejecting the argument that "SWA" in "Swatch" and "Swap" is the "dominant portion of both marks" because "[w]e compare whole words, not parts, and generally use the phrase 'dominant portion' to refer to the non-generic words in multiword marks" (citation omitted)).

Moreover, in *Pizzeria Uno* and *Synergistic*, the mark owners had disclaimed one of the two words in their marks as part of the registration process, thereby conceding that the disclaimed words were descriptive and indistinctive.[7] In *Pizzeria Uno*, we found "Uno" the dominant word because, in addition to the disclaimer of "Pizzeria," "Uno" was the more conspicuous word in the mark and not "a term in common use in English which describes or identifies any product or characteristics of a product." 747 F.2d at 1533. Similarly, in *Synergistic*, we found "Doctor" the dominant word because the owners had explicitly disclaimed "Glass" and "Windshield," both of which merely described the services offered. 470 F.3d at 171–72.

---

[7] When a party applies to register a mark that contains two parts, one of which is descriptive and therefore not entitled to protection, the USPTO requires the party to disclaim exclusive use of that portion, aside from its use in conjunction with the mark. *Pizzeria Uno*, 747 F.2d at 1529 n.5.

13

Here, Grayson O has not disclaimed any part of its registered mark, as neither part is descriptive, and no other distinction exists between the two parts. Both "F" and "450" are short, and because the registered mark has no associated style, they are, by default, the same size and font. In the marketplace the "f" and the "450" are not only the same size and adjacent to each other, but they also have only an almost indiscernible space between them. To apply the analysis in *Pizzeria Uno* and *Synergistic* would require us to disregard critical attributes of the mark Grayson O registered and the mark consumers see.

Indeed, were we to ignore all this and compare only the use of "450" in Grayson O's and Agadir's marks, we still could not find the marks similar because the marks look dramatically different to consumers in the marketplace. *See CareFirst*, 434 F.3d at 271 ("[B]ecause the likelihood-of-confusion analysis looks to the actual use of competing marks, a comparison of the texts of the two marks alone is insufficient if the marks have different appearances in the marketplace."). Nothing about the style, color, or presentation of the marks is remotely alike. *See supra* notes 1–3. Grayson O's label includes an "f" followed by a ligature of "450." Both are rendered in a dark font over a light ovoid shape on a solid red background.[8] Agadir's label does not begin with "f." Its label begins with "Agadir Argan Oil" in a black, stylized font above "Hair Shield 450º" in a white, sans serif font with "plus" written in black in the "0" of "450." The

---

[8] It appears one of Grayson O's products may have a label that is the negative of its typical label, meaning it has a white background, red shape, and white lettering. *See supra* note 1. This does not create any similarity to Agadir's label.

14

background is a yellow-to-red gradient that appears to depict a sunrise or sunset over a landscape.[9]  Rather than being similar, the two marks are highly distinguishable.[10]

Thus, even if "450" was a separable, dominant part of Grayson O's mark (which it is not), given the many other differences between Grayson O's and Agadir's marks, the district court correctly concluded that the marks are not similar.

## C.

We now turn to the question of Agadir's intent.  Grayson O insists that it has presented proof of Agadir's intent to infringe.  Grayson O maintains that its evidence shows that, in response to Grayson O's letter warning Agadir about its infringing use of "450," Agadir demonstrated intent to further the infringement by telling its design team to increase the "font size and the boldness of the Infringing 450 Mark on the label."  If this was a full account of the evidence, it might well suggest an intent to infringe.

But, in fact, the record evidence shows that Agadir increased the size of the entire phrase "Hair Shield 450," not simply "450."  Indeed, from the time Grayson O alleges it first became aware of Agadir's use of "450" to the time Agadir's product entered the market, the comparative size of the "450" on Agadir's label *decreased* as Agadir

---

[9] Agadir's initial July 2012 prototype label had a red background, *see supra* note 3, but by August 2012 the design included a yellow-to-red gradient.

[10] Grayson O maintains that because its registered "F 450 Mark is suggestive and, therefore, has conceptual strength, the consumer who first encountered the Grayson O product is likely to associate the suggestive F 450 mark with the product."  According to Grayson O, a consumer who later encounters Agadir's product would associate it with Grayson O.  The problem with this argument is that in Grayson O's scenario the customer would be looking for a product called "f450°," or "fahrenheit 450°," not "450."  And of course, as we explained in *CareFirst* and again above, the suggestiveness of a mark does not guarantee it has conceptual strength.  *See* 434 F.3d at 270.

increased the size of the words "Hair Shield" to equal prominence. *See supra* note 3. If this change evidences *any* type of intent on the part of Agadir, it is an intent to distinguish its label from Grayson O's label. Even without such an inference, however, nothing about the label change evinces an intent to infringe.[11]

D.

Finally, we address Grayson O's argument as to actual confusion. Grayson O maintains that it has presented substantial evidence of actual confusion. The district court, however, found that Grayson O had offered only *de minimis* evidence of actual confusion. *Grayson O Co.*, 2015 WL 7149935, at \*11. We agree.

The sole evidence Grayson O offered as to actual confusion was the deposition testimony of its president, Van Darren Stamey, that his employees and a few customers at the trade show notified him that a company was "infringing" on his mark by using "450" in its mark. According to Stamey, all of these people believed Agadir had used Grayson O's mark on Agadir's unrelated product. Thus, although questioned at some length on the issue, Stamey repeatedly indicated that those who approached him were certain that Agadir's products copied those of Grayson O, not that they mistook Agadir's products for

---

[11] Relying on *CareFirst*, Grayson O argues in the alternative that if it failed to offer evidence of Agadir's intent to infringe, this factor cannot weigh against finding a likelihood of confusion. Grayson O misreads *CareFirst*. There we held that we could not infer from a junior user's filing for a state registration of its mark — without evidence of intent — a bad faith intent to infringe on the senior mark. 434 F.3d at 273. We explained that the intent of the junior user was relevant only if it "intended to capitalize on the good will associated with the senior user's mark," and so this factor did not weigh heavily in the analysis. *Id.* But we never held the lack of intent immaterial to the overall determination of whether there was a likelihood of confusion. While it does not resolve the ultimate issue, certainly the lack of evidence of intent in this case can "militate[] against a finding of a likelihood of confusion." *George*, 575 F.3d at 398.

16

Grayson O's.  The reasonable inference from this evidence is not that consumers would confuse the products but instead that they could differentiate between them.  In fact, Grayson O offered less evidence of actual confusion than we have held to be *de minimis* in other cases.  *Compare George*, 575 F.3d at 399 (four instances of actual confusion over two years where the company had 500,000 sales per year "is at best *de minimis*"), *with Sara Lee*, 81 F.3d at 466–67 (finding the evidence of actual confusion "nearly overwhelming" when consumers and service merchandisers testified about many occasions of confusion between two products and a survey found "thirty to forty percent of the consuming public was confused by the similarity").

Grayson O protests that the similar quality and sales channels of the products render it unlikely that consumers would notice a difference and complain.  This may be true, which is why such factors are also considered as part of the likelihood of confusion analysis, and do, without debate on appeal, weigh in favor of Grayson O in this case.  But we cannot infer actual confusion when Grayson O has presented no evidence to support such an inference. [12]

---

[12] In the alternative, Grayson O argues that even if it failed to produce evidence of actual confusion, the lack of actual confusion is at best "neutral" in determining whether there is a likelihood of confusion.  This argument ignores established circuit precedent.  "Although proof of actual confusion is not necessary to show a likelihood of confusion, the absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion."  *CareFirst*, 434 F.3d at 269.  Thus, the lack of confusion in this case is relevant to our analysis.

III.

In sum, Grayson O has failed to show a likelihood of confusion between its mark and Agadir's mark because — despite the similar facilities, advertising, and quality of the products — Grayson O's mark is weak and differs in appearance from Agadir's mark. It is thus unsurprising that Grayson O presented no meaningful evidence of intent to infringe or actual confusion. Given such a record, the district court did not err in granting summary judgment to Agadir. As we explained in *George*, "we are aware of no case where a court has allowed a trademark infringement action to proceed beyond summary judgment where two weak marks were dissimilar, there was no showing of a predatory intent, and the evidence of actual confusion was *de minimis*." 575 F.3d at 400. The same holds true today. Accordingly, the judgment of the district court is

*AFFIRMED*.