**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-4590**

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

DARRIN ALONZO MILLER,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, District Judge. (2:21-cr-00261-1)

———————

Submitted: November 12, 2024               Decided: January 13, 2025

———————

Before AGEE, QUATTLEBAUM, and RUSHING, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ON BRIEF:** Wesley P. Page, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. William S. Thompson, United States Attorney, Jennifer Rada Herrald, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Darrin Alonzo Miller of one count of transferring obscene material to a minor under the age of 16, in violation of 18 U.S.C. § 1470. Miller appeals, arguing that the evidence does not support the jury's finding that the letter in question met the definition of "obscenity." We previously considered—and rejected—the bulk of Miller's argument in our decision issued after the Government noted an interlocutory appeal in this case. *United States v. Miller*, 61 F.4th 426 (4th Cir. 2023). As for the rest, we readily conclude that the jury's verdict did not run afoul of the First Amendment because Miller's letter meets the Supreme Court's definition of "obscenity." Accordingly, we affirm his conviction.

I.

The record shows that while Miller was imprisoned in a state facility, he sent a sexually explicit letter to his adopted sister in which he described, in graphic detail, sexual acts he envisioned occurring between himself and his sister. At the time, Miller was thirty-eight years old and she was fourteen years old.

After she received the letter, state law enforcement officers were notified and they investigated. Corporal Jennifer DeMeyer of the West Virginia State Police interviewed Miller, who acknowledged that he sent the letter. Throughout the interview, Miller referred to the recipient as "his sister," J.A. 32, though he also indicated that she was adopted and acknowledged that she was under the age of sixteen.

2

Based on his sending the letter to the minor, Miller was indicted for violating 18 U.S.C. § 1470, which prohibits "using the mail or any facility or means of interstate or foreign commerce" to "knowingly transfer[] obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempt[ing] to do so." To convict, the Government had to prove that Miller (1) used the mail or other means of interstate commerce to (2) knowingly transfer or attempt to transfer (3) obscene matter (4) to an individual under the age of 16 years (5) while knowing that the recipient was under the age of 16. Miller stipulated to every element of the offense except that the letter constituted "obscene matter."

Before trial, Miller moved in limine to exclude evidence about *how* he knew the recipient was underage, specifically, any evidence that she was his adopted sister. The district court granted that motion, and the Government noted an interlocutory appeal of that decision. We reversed, reasoning that this evidence was admissible in part because it "could assist the jury in determining whether the material is obscene." *Miller*, 61 F.4th at 431. After so holding, we remanded the case for further proceedings.

Miller exercised his right to a jury trial, and in light of his stipulation to all but the obscenity element, the trial was short and focused exclusively on whether the letter met that definition. To prove this element, the Government introduced the letter. It also called Corporal DeMeyer to testify about her meetings with Miller and with his sister and her mother.

The jury convicted Miller, and the district court denied his motion for judgment of acquittal. The court then sentenced him to thirty-seven months' imprisonment, to run

3

concurrently with the remainder of his state sentence, and to three years' supervised release.

Miller noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291.

II.

Most speech is protected by the First Amendment and therefore cannot be the basis for criminal charges. But obscenity falls outside the Constitution's protection, and thus can be subject to criminal prohibitions. One offense that qualifies is § 1470, which targets "obscene matter," as defined in accordance with Supreme Court First Amendment caselaw.

In what may well be one of the most recognizable quotes from a Supreme Court Justice to non-lawyers, Justice Potter Stewart once remarked, "I know it when I see it" to define obscenity. *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). Though this was not the definition of obscenity adopted by the full Court, it is nonetheless an apt reflection on a somewhat intuitive sensibility underlying the Court's attempt to describe the line between the merely sexually explicit—which is protected—and the obscene—which is not.

To that end, the Court has recognized that printed words alone can be "obscene" and thus fall outside the First Amendment's protection. *Kaplan v. California*, 413 U.S. 115, 118–20 (1973). The Supreme Court requires balancing three prongs when determining whether something is obscene: First, we consider "whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest in sex." *Marvin Miller v. California*, 413 U.S. 15, 24 (1973) (quoting

4

*Kois v. Wisconsin*, 408 U.S. 229, 230 (1972)). Appealing to prurient interest means that the material appeals to a "shameful or morbid interest in nudity, sex or excretion" or being "substantially beyond customary limits of candor in description or representation of such matters." *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957); *cf. United States v. Guglielmi*, 819 F.2d 451, 455 (4th Cir. 1987) (defining prurient interest as appealing to those "individuals eager for a forbidden look"). Second, we look to "whether the work depicts or describes, in a patently offensive way, sexual conduct." *Marvin Miller*, 413 U.S. at 24. And although "contemporary community standards" originally appeared only in the first prong's description, the Supreme Court later clarified that the second prong "is also a question of fact to be decided by a jury applying contemporary community standards." *Ashcroft v. ACLU*, 535 U.S. 564, 576 n.7 (2002). Third, we analyze "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Marvin Miller*, 413 U.S. at 24.

On appeal, Miller asserts that the letter does not constitute obscenity and, therefore, his conviction cannot stand.[1] Acknowledging the letter's frank and explicit sexual language, Miller nonetheless asserts that the letter's text does not "appeal[] to the prurient

---

[1] While the Court ordinarily reviews the denial of a motion for judgment of acquittal based on sufficiency of the evidence grounds under a "substantial evidence" standard favorable to the Government prevailing at trial, the constitutional overlay to an obscenity challenge shifts the Court's review to something more akin to a *de novo* standard of review. *See Marvin Miller*, 413 U.S. at 25 (acknowledging that because obscenity-based convictions implicate the First Amendment, appellate courts must "conduct an independent review of constitutional claims" as appropriate); *see United States v. Salcedo*, 924 F.3d 172, 176–77 (5th Cir. 2019) (discussing the unsettled nature of what *Marvin Miller*'s "independent review" looks like).

interest" or "portray sexual acts in a patently offensive way" under contemporary community standards.[2] Opening Br. 5. Miller contends that these two prongs of obscenity were not met because the words used in the letter are no more explicit than lyrics found in certain modern well-known songs. Because the text itself does not satisfy the definition of obscenity, Miller asserts that the jury necessarily, but improperly, relied on evidence from outside the four corners of the letter to convict him. And, in his view, because neither the age disparity nor the familial relationship between sender and recipient are expressly set out in the letter, neither fact was an appropriate ground for deeming the letter "obscene." He also contends that a contrary view dilutes the meaning of obscenity and conflates elements of § 1470 given that the recipient's age is a separate element of the offense.

None of Miller's arguments hold water. Our prior decision in the Government's interlocutory appeal of Miller's case dispenses with the notion that we must consider the four corners of the letter apart from evidence of the recipient's age or familial relationship when considering whether the letter is obscene. As we recognized there, because incest is taboo, evidence that the letter describes a sexually explicit fantasy involving Miller and his minor sister "may inform the jury as to whether the letter is obscene, *i.e.*, whether it appeals

---

[2] Miller's brief takes a passing shot at the third prong of obscenity, cautioning the Court against the conclusion that private letters inherently lack literary, artistic, political, or scientific value. But he acknowledges that this prong is likely satisfied here and does not seriously challenge it. If not quite a concession that the third prong is met, Miller has not sufficiently developed this argument to warrant our further discussion. *Accord Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by . . . failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)). And, regardless, we fail to see any basis for concluding that *this* letter would raise constitutional concerns under the third prong of obscenity.

to a shameful and prurient interest in sex." 61 F.4th at 431 (citations omitted). In so holding, we expressly rejected Miller's argument that the jury's consideration of obscenity was limited to the letter's text. Noting that the Supreme Court's definition of obscenity takes into account the work "as a whole," we observed that "[i]n the specific circumstances of this case—a sexually explicit letter directed to a minor victim to whom the sender was related that describes sexually explicit acts between the sender and victim—the 'whole' necessarily includes Miller's relationship to the recipient." *Id.* at 431–32 (citation omitted). Miller has not provided any reason to revisit our prior decision, which remains binding authority in this Circuit.

In truth, we remain convinced by that decision's reasoning. Whether material is obscene is based on its totality, looking at the three prongs the Supreme Court has identified. Although Miller's letter does not use the word "sister" or "brother" when talking about the individuals it discusses engaging in an explicit sexual encounter, it does use the words "you," "your," "I," "me," and "my." J.A. 87–88. And it envisions the recipient saying "my name 'Darrin'" during the encounter. J.A. 87. Because this is a private letter between the sender and recipient, the identity of those two individuals—which necessarily encompasses their familial relationship and their age—provides salient context to who the words reference and precisely what sexual acts are being described. Therefore, the words within the four corners of the letter *do* in fact recount what would be incest involving an adult male and his fourteen-year-old sister. That reality is something the jury was free to consider in assessing whether, under contemporary community standards, the letter

"appeal[s] to the prurient interest" or "portray[s] sexual conduct in a patently offensive way." *Marvin Miller*, 413 U.S. at 24.

Given this conclusion, the flaws inherent in the rest of Miller's argument come into sharp relief. The letter may reasonably (and consistent with the First Amendment) be deemed obscene not just because it uses vulgar terms, but because it uses such language to describe—graphically—specific sexual acts.[3] Furthermore, whatever the state of contemporary music, using sexually explicit lyrics to describe conduct between two unrelated, consenting adults stands on different legal footing than using identical words to describe conduct between an adult brother and minor sister. Contrary to Miller's contention, there's simply no comparison between them in ways that are directly relevant to whether the material in question meets the first two prongs of obscenity.

The Supreme Court requires more than Justice Stewart's "know it when [we] see it" understanding of obscenity, but those words still ring true when applying the Court's requisite three-pronged assessment. *Jacobellis*, 378 U.S. at 197. Miller's choice of words combined with the specific conduct depicted between the sender and the receiver create the strong impression on the reader as to the letter's obscene nature. And the totality of the circumstances fully supports the conclusion that the letter both falls outside "customary limits of candor in description or representation of such matters," *Roth*, 354 U.S. at 487

---

[3] We take no position on whether or when the use of vulgarities alone could be deemed obscene because this case does not involve that scenario. The whole at issue here involves such language being used to describe specific acts which take on additional meaning when understanding the relationship of the described individuals. All three layers are present here and, taken together, they are the basis for today's holding.

8

n.20, and "depicts or describes, in a patently offensive way, sexual conduct," *Miller*, 413 U.S. at 24.

We thus readily conclude that Miller's conviction does not run afoul of the First Amendment. The record supports the jury's finding that the letter Miller sent to his fourteen-year-old sister was "obscene matter" for purposes of § 1470, as Supreme Court caselaw defines that term.

## III.

For the reasons provided, we affirm Miller's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

*AFFIRMED*