**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2109**

---

NAVIENT SOLUTIONS, LLC,

        Plaintiff – Appellant,

    v.

JEFFREY LOHMAN; LAW OFFICES OF JEFFREY LOHMAN, A Professional Corporation; GREGORY TRIMARCHE; RICK GRAFF; GST FACTORING, INC.,

        Defendants – Appellees.

    and

DAVID MIZE; IBRAHIM MUHTASEB; ALYSON DYKES; DAVID MIZE LAW PLLC; SCOTT FREDA; HERBERT SIEVERS, a/k/a Buddy; RJ MARSHAL; MANNY KASHTO; BILL CARLSON; DAVID SKLAR; WES SABRI; JEREMY BRANCH; CHAMPION MARKETING SOLUTIONS, LLC, d/b/a CMS; JOHN DOES 1-20,

        Defendants.

---

**No. 23-2163**

---

NAVIENT SOLUTIONS, LLC,

        Plaintiff – Appellee,

    v.

JEFFREY LOHMAN; LAW OFFICES OF JEFFREY LOHMAN, A Professional Corporation,

Defendants – Appellants.

and

JEREMY BRANCH; CHAMPION MARKETING SOLUTIONS, LLC, d/b/a CMS; JOHN DOES 1-20; GREGORY TRIMARCHE; DAVID MIZE; IBRAHIM MUHTASEB; RICK GRAFF; GST FACTORING, INC.; ALYSON DYKES; DAVID MIZE LAW PLLC; SCOTT FREDA; HERBERT SIEVERS, a/k/a Buddy; RJ MARSHAL; MANNY KASHTO; BILL CARLSON; DAVID SKLAR; WES SABRI,

Defendants.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:19-cv-00461-LMB-WEF)

---

Argued:  October 29, 2024                                    Decided:  May 6, 2025

---

Before KING and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by published opinion.   Senior Judge Floyd wrote the opinion in which Judge King and Judge Quattlebaum joined.

---

**ARGUED:** George Reid Calhoun, V, IFRAH PLLC, Washington, D.C., for Appellant/Cross-Appellee.  Jeffrey Ernest Grell, TED B. LYON & ASSOCIATES, Mesquite, Texas; Mikhael David Charnoff, CHARNOFF SIMPSON PLLC, Vienna, Virginia, for Appellees/Cross-Appellants. **ON BRIEF:** Jeffrey R. Hamlin, IFRAH PLLC, Washington, D.C., for Appellant/Cross-Appellee.  Thomas F. Urban, II, FLETCHER, HEALD & HILDRETH, PLC, Arlington, Virginia, for Appellees Jeffrey Lohman and Law Offices of Jeffrey Lohman.

---

2

FLOYD, Senior Circuit Judge:

In 2019, student loan servicer Navient Solutions, LLC filed the instant civil action, alleging that defendants conspired to defraud Navient out of millions of dollars of unpaid student debt. More specifically, Navient claims that defendants (a group of lawyers, marketers, and debt-relief businesses) lured dozens of student borrowers into filing sham lawsuits against Navient under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, which proscribes abusive telemarketing practices.

This case proceeded to trial, and a jury found in Navient's favor. Following trial, however, the district court granted defendants' renewed motions for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). The court held that defendants' TCPA suits were not "sham litigation" and "because the only damages Navient argued at trial … were directly a result of the TCPA litigation," "the jury's verdicts must be set aside." J.A. 695–99. Having reviewed the record and considered oral argument, we affirm.

I.

A.

Navient filed this action in 2019 against a total of 18 defendants. Relevant here are the six defendants that went to trial: The Law Offices of Jeffrey Lohman and two of its

3

attorneys, Jeffrey Lohman and Jeremy Branch; and GST Factoring, Inc. (a debt-relief business) and two of its principals, Greg Trimarche and Rick Graff.[1]

At bottom, Navient claims that defendants devised a mail and wire fraud scheme, which resulted in student borrowers ceasing loan payments and filing illegitimate TCPA actions against Navient. Navient alleges that the scheme violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), and pursues additional counts for RICO conspiracy, 18 U.S.C. § 1962(d), tortious interference with contract, and fraud.

According to Navient, to facilitate the scheme, defendants recruited borrowers and ensured that they stopped paying their loans. Defendants then coached borrowers on how to revoke their consent to receive ATDS calls, or automatic telephone dialing system calls, from Navient. The TCPA prohibits ATDS calls without consent and, more generally, aims to protect privacy rights while permitting legitimate telemarketing practices. *See* Pub. L. No. 102-234 § 2(9), 105 Stat. 2394 (1991). The statute establishes a $500 fine per ATDS call, with up to $1,500 fines for willful or knowing violations. *See* 47 U.S.C. § 227(b)(3).

Once a borrower logged about 40 calls from Navient, defendants would pursue a TCPA claim on their behalf, whether through litigation or arbitration. The scheme culminated in dozens of individual TCPA cases, 61 of which are at issue in this appeal.[2] Of the 61, the parties settled 37, Navient won 4, and defendants voluntarily dismissed 20.

---

[1] Before sending this case to the jury, the district court granted Branch's Rule 50 motion. Navient does not raise its claims against Branch in this appeal, so we do not consider them.

[2] Defendants note that they filed a total of 76 actions, but Navient "decided not to seek damages" for cases in which borrowers prevailed and then "withdrew other claims." Response Br. 43 & n.21.

Navient's settlements totaled $568,225.13 in direct payments to borrowers and $945,705.71 in cancelled student debt. *See* J.A. 2603–04.

### B.

Throughout this subsequent RICO suit, defendants have argued that their prior litigation activity is immunized by the *Noerr–Pennington* doctrine. This doctrine "safeguards the First Amendment 'right to petition the government for a redress of grievances,' U.S. Const. amend. I, by immunizing citizens from the liability that may attend the exercise of that right." *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 362 (4th Cir. 2013). Because *Noerr–Pennington* "extends to petitioning the courts," defendants claim that all of their TCPA cases are protected. *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2001) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.")).

Navient, of course, disagrees. It maintains that defendants' prior conduct falls under the "sham litigation" exception to *Noerr–Pennington*. This exception holds that the First Amendment offers no protection when the supposed "petitioning activity" consists of "a pattern of baseless, repetitive claims … which leads the factfinder to conclude that the administrative and judicial processes have been abused." *Cal. Motor*, 404 U.S. at 513.

The district court rejected defendants' *Noerr–Pennington* argument at the summary judgment stage, and the case proceeded to trial. After six days of testimony, the court

5

denied defendants' motions for judgment as a matter of law and sent the case to the jury. *See* J.A. 1939–40 ("I have certain concerns myself, but I'm going to wait to see what [the jury] do[es]."); *see also* Fed. R. Civ. P. 50(a) (outlining standard for judgment as a matter of law). The jury deliberated for four days before returning verdicts against each defendant and awarding a total of $2,156,500 in damages to Navient.

## C.

About two years after trial, however, the district court vacated the jury's verdicts and granted defendants' renewed motions for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.").

The court reasoned: "the only damages Navient argued at trial, and for which it presented evidence, were directly a result of the TCPA litigation. Because the Court finds that the TCPA litigation was not sham litigation, as a matter of law, there was no legal basis upon which any damages could be awarded to Navient." J.A. 699.

Navient now appeals and seeks reversal of this post-trial order.

## II.

We review the grant of a Rule 50(b) motion *de novo*, viewing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Humbert v. Mayor of Balt. City*, 866 F.3d 546, 554 (4th Cir. 2017). We will affirm if "the only conclusion a reasonable

6

jury could have reached is one in favor of the moving party." *Int'l Ground Transp. v. Mayor of Ocean City*, 475 F.3d 214, 218–19 (4th Cir. 2007)). This occurs, for example, when "the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 229 (4th Cir. 2024) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 391 (4th Cir. 2014)).

### III.

### A.

We begin by determining whether defendants' TCPA cases were indeed a sham.[3] As outlined in Section II.B, petitioning activity generally receives First Amendment immunity under *Noerr–Pennington*, but sham litigation does not. *Waugh Chapel*, 728 F.3d at 362 (discussing doctrine's antitrust origins and subsequent expansions) (citing *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136–39 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669 (1965)); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–31 (9th Cir. 2006) (same). "A classic example [of sham litigation]

---

[3] The parties debate an application of the "sham litigation" exception to *Noerr–Pennington*, but this Court has acknowledged a second potential exception for "fraud on the courts." *Balt. Scrap*, 237 F.3d at 401–02. Because Navient does not explicitly raise this exception, and because "the Supreme Court has not approved a fraud exception to *Noerr–Pennington* immunity at all," we do not address it here. *Id*. at 404; *see also Short v. Hartman*, 87 F.4th 593, 615 (4th Cir. 2023) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017))).

is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991).

Here, Navient claims that defendants engaged in sham litigation by manufacturing actions under the guise of a "consumer-protection scheme" only to "make money and fraudulently get student-debtors 'out' of paying back their loans"—in other words, by "operat[ing] like a lawsuit mill." Opening Br. 2, 21. Navient bears the burden of proving that these suits were in fact a sham. *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003) (the party opposing *Noerr–Pennington* as an affirmative defense "has the burden of proving that its [opponent's] conduct was a sham" (quoting *Hosp. Bldg. Corp. v. Trustees of Rex Hosp.*, 791 F.2d 288, 292–93 (4th Cir. 1986))).

Courts are divided regarding the exact test used to determine whether a series of actions like defendants' (as opposed to a single action) constitutes a sham. *See U.S. Futures Exch., L.LC. v. Bd. of Trade of the City of Chic., Inc.*, 953 F.3d 955, 964 & n.10 (7th Cir. 2020) (outlining circuit split). However, in *Waugh Chapel*, this Court made clear that, in the Fourth Circuit, when a purported sham involves a series, the "standard of *California Motor* should govern." 728 F.3d at 364. Under *California Motor*, sham litigation is "a pattern of baseless, repetitive claims … which leads the factfinder to conclude that the administrative and judicial processes have been abused." 404 U.S. at 513.

When adopting the *California Motor* standard, this Court explicitly rejected the argument that a series of actions should be analyzed under the two-step test we use to assess a single action. *See Waugh Chapel*, 728 F.3d at 363–34. Under this strict two-step

8

analysis, a court first considers the suit's objective merits and "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Pro. Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60–61 (1993); *see also IGEN Int'l*, 335 F.3d at 312 ("even litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the objective baselessness requirement"). We are therefore bound to apply the series-specific test outlined in *Waugh Chapel*. *See McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc) ("one panel cannot overrule a decision issued by another panel").

As *Waugh Chapel* instructs, to properly assess the TCPA actions, we ask whether defendants "indiscriminately filed (or directed) a series of legal proceedings without regard for the merits and for the purpose of violating [the] law." 728 F.3d at 364. This question prompts a "holistic evaluation" of "the subjective motive of the litigant and the objective merits of the suits" as well as "other signs of bad-faith litigation." *Id.* When applied here, we conclude that the TCPA actions were not a sham. We acknowledge that certain aspects of the cases likely exhibit bad faith, but we find that each action ultimately centered on defendants' investment in a single and legitimate question of statutory interpretation: whether Navient violated the TCPA by using an ATDS. In this way, defendants were subjectively motivated to bring actions with objective merit.

For its part, Navient explicitly concedes the merits of the TCPA cases. Its complaint alleges that defendants "t[ook] advantage of unsettled legal issues in the TCPA." J.A. 82. And a Navient executive later confirmed the same, testifying that (a) "courts were split on [the definition of] ATDS" and (b) Navient's settlement decisions (i.e., 37 settlements

9

totaling over $1,500,000) accounted for its ongoing "win-loss rate." J.A. 1430, 1482, 1487. The executive's concessions are made in the past tense (e.g., courts *were* split) because, a few months before trial in this case, the Supreme Court clarified the statutory definition of ATDS. *See Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). The parties dispute the merits of the TCPA actions post-*Duguid*, but we find that the Court's need to resolve the issue only highlights the uncertainty at the time that the TCPA actions were filed.

Accordingly, we find that defendants filed a series of actions *with* regard for the merits, i.e., to adjudicate plausible claims that Navient violated the TCPA. Whether Navient did, in fact, violate the statute is not determinative. *See Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1046 (9th Cir. 2009) (finding immunity where failed suits "had a plausible argument"). Instead, because defendants pursued a contested issue of TCPA interpretation, they did not engage in sham litigation, and their petitioning activity is immunized under *Noerr–Pennington*.[4]

## B.

Although we conclude that the TCPA actions are protected by *Noerr–Pennington*, we recognize that this case raises important questions about just how far this protection extends, e.g., does it immunize private arbitration, pre-suit conduct, and non-litigant

---

[4] Because the TCPA actions share a primary legal issue, they seemingly avoid at least some of the concerns that motivated *Waugh Chapel*'s adoption of a more "holistic" sham standard, e.g., the complicated merits evaluation of a series. *See* 728 F.3d at 364. In any event, by holding that the TCPA actions pass our series-specific test, we also find that they would pass our two-step analysis.

defendants?  Ultimately, however, we do not answer these questions today because Navient (a) failed to raise the arbitration issue on appeal and (b) only seeks damages for the TCPA cases themselves, not for pre-suit or non-litigant conduct.  We examine both issues below.

First, as to arbitration, the district court's decision to immunize the TCPA arbitrations (in addition to the TCPA litigations) may have been error.  *Compare Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 393 (E.D. Va. 2002) (arbitration is "part of the adjudicatory process and thus warrant[s] *Noerr–Pennington* immunity"), *with Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 862, 869 (E.D. Va. 2013) ("application of the *Noerr–Pennington* doctrine to private arbitrations is not permissible").  But Navient does not challenge this decision, and "[f]ailure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues." *IGEN Int'l,* 335 F.3d at 308–09 (declining to consider waived argument despite being "inclined to believe" the district court erred); *see also* Fed. R. App. P. 28(a)(8)(A).

Second, as to pre-suit and non-litigant conduct, courts have generally shown a willingness to immunize "conduct incidental to the prosecution of the suit." *Sosa*, 437 F.3d at 931–37 (quoting *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993)) ("we must give adequate 'breathing space' to the right of petition," and, therefore, like the "majority of other circuits," we "extend[] *Noerr–Pennington* immunity to litigation-related activities preliminary to the formal filing of the litigation" (quoting *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 531, (2002))); *see also Balt. Scrap*, F.3d at 401 ("non-parties often provide aid to litigants, whether through financial backing, legal assistance, amicus briefs, or moral

11

support" and therefore limiting protection to litigants would "severely curtail the rights of all citizens to petition the government and to associate with others who do so").

Here, defendants' "incidental conduct" would include acts like their efforts to recruit borrowers and induce Navient's calls. Nevertheless, we need not actually determine whether such conduct is immunized because Navient does not request damages for it. As shown by Navient's "Damages Summary" (a trial exhibit), the company only seeks its TCPA litigation costs. It requests "Cash Amount Paid," "Debt Amount Written Off," and "Legal Fee/Expense Paid," each broken down by borrower action. J.A. 2603–04. Tellingly, Navient confirmed the district court's assessment that any other damages would be "inchoate." J.A. 433–34 (Court: "other than the individuals who brought the TCPA claims … you don't have any actual evidence as to other loans that you may have lost revenue from as a result of the actions of, say, the GST people?" Navient: "Yeah. We know it happened, but we haven't been able to quantify it.").

As a result, even if *Noerr–Pennington* did not cover defendants' incidental conduct, the Court is only presented with damages for immunized litigation costs. We therefore must leave analyzing the exact bounds of *Noerr–Pennington* immunity for another day.

## C.

In sum, we agree with the district court that the TCPA actions are immunized under *Noerr–Pennington* as petitioning activity. Because Navient bore the burden to prove that the TCPA actions were a sham, and because Navient failed to request damages for any non-petitioning activity, judgment as a matter of law was appropriate. *See IGEN Int'l*, 335

12

F.3d at 311–12 (outlining *Noerr–Pennington* burden); *see also Sony Music Ent.*, 93 F.4th at 229 ("A district court should grant judgment as a matter of law 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" (quoting *Russell*, 763 F.3d at 391)).

In making this conclusion, we emphasize that "[w]hether to condemn [defendants'] activities [] is a different question than whether to abrogate *Noerr–Pennington* immunity[.]" *Balt. Scrap*, 237 F.3d at 402 ("In achieving an overall public benefit like the right to petition, any immunity will shield individual instances of conduct that might otherwise be actionable."). In other words, the Court today does not simply rubber stamp all of defendants' conduct. Rather, we find that defendants' petitioning activity is protected under the First Amendment.

IV.

As part of this appeal, Navient also argues that the district court erred by excluding nearly all borrower depositions from trial and then "rel[ying] heavily on one snippet of borrower testimony." Opening Br. 57–58. To begin, we reject the characterization of the court's reliance as "heavy." The order only mentions borrower testimony in dicta. *See* J.A. 698–99 (flagging testimony as additional reason why Navient's untimely nominal damages argument is unsuccessful). But even assuming that this exclusion was error, we find the error harmless because it does not affect our Rule 50 judgment. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 375 (4th Cir. 2015) ("Even if the district court should not have excluded this evidence in the first instance, an evidentiary error is harmless when

13

it does not affect a party's substantial rights—in this case, whether it can be said with a high probability that the error did not affect the judgment.") (citing cases).

Navient proffered that a total of 44 borrowers "could provide testimony on various topics, including Defendants' fraudulent marketing practices, the lack of inquiry in connection with discovery requests signed by the Lohman Defendants, and the deceptive [ATDS consent] 'revocation' process used by Defendants." Opening Br. 58. Accepting this as true, such testimony does not move the needle for Navient. Additional evidence about defendants' scheme to build claims—evidence that Navient itself qualifies as "already substantial" (*id.*)—would impact neither (a) the merits of the underlying TCPA interpretation issue nor (b) the fact that Navient only requested litigation/arbitration-based damages. As a result, the proffered borrower testimony does not affect our judgment, and we find its exclusion harmless.

## V.

Lastly, Defendants filed a protective cross-appeal relevant only if this Court reversed the district court. Because we affirm the district court, we dismiss the cross-appeal without addressing its merits.

## VI.

Based on the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

14